GEORGIANA DOWNES, ADMINISTRATRIX, ETC., v. THE
HARPER HOSPITAL.

*Charity hospital — Maintenance—Contract relation of patient—
Trust fund—Liability for negligence of managers or
employés.*

1. A corporation organized and maintained for no private gain,
but for the proper care and medical treatment of the sick,
and to that end to manage a trust fund donated for that pur-
pose, cannot be made liable for injuries sustained by a patient
by reason of the negligent acts of its managers or employés.[1]

2. The fact that patients who are able to pay are required to do
so does not deprive the corporation of its eleemosynary char-
acter, nor permit a recovery for damages on account of the
existence of contract relations.

3. The Court are not to be understood as intimating any opinion
as to whether there is any liability on the part of the trustees
of defendant for the alleged defect in the construction of the
room in which the decedent was confined, and from which
he escaped by reason thereof, and was killed, or on the part
of those intrusted with his care and treatment.

Error to Wayne.    (Hosmer, J.)    Argued June 21,
1894.  Decided September 25, 1894.

Case.  Plaintiff brings error.  Affirmed.  The facts are
stated in the opinion.

*James H. Pound,* for appellant.

*Edwin F. Conely* and *Orla B. Taylor,* for defendant.

GRANT, J.  Plaintiff's decedent and husband became
insane from disease, and, by advice of his physician, was

---

[1] See *Williamson v. Industrial School of Reform,* 23 L. R. A.
200, for note on the liability of charitable institutions for neg-
ligence.

conveyed to Harper Hospital. He was violent, and was confined in a room in the third story of the building, which was especially arranged for such patients, having a framework of iron over the windows. The deceased wrenched this iron framework off, jumped from the window, and was killed. Plaintiff brings this suit to recover damages for the benefit of herself and children, alleging negligence on the part of the defendant.

Defendant is a body corporate organized under Act No. 242, Laws of 1863, entitled "An act for the incorporation of hospitals or asylums in cases where valuable grants or emoluments have been made to trustees for such purposes," and, at the time the alleged right of action is said to have accrued, was engaged in maintaining at Detroit the hospital commonly known as "Harper Hospital."

In the declaration it is alleged that on or about January 26, 1890, Downes was ill, and was so disordered in mind from the effects of disease and pain that he became and was temporarily insane, violent, and dangerous, so that it became necessary to place him under restraint and skillful medical treatment to prevent him from harming himself and others, and to effect his cure; that the defendant, at the request of plaintiff, and well knowing Downes' mental and physical condition, received him into Harper Hospital as a patient, and, in consideration of the payment of $2 per day, agreed to give Downes proper medical treatment, and to keep and restrain him so that he should suffer no bodily injury, and his life should be preserved from injury which he might inflict upon himself, and to have the room in which he was confined secure, with a proper and sufficient guard, framework, or other suitable protection over the window of such room, and so securely fastened that Downes, when confined in the room, would not be able to tear away the framework or grating over the window and throw himself therefrom, and to keep him

properly handcuffed, so that he could not injure himself by tearing away the framework or bars over the window, or by throwing himself out of the window, and also to keep some suitable person constantly in attendance upon him.

It is further alleged that the defendant, in disregard of its alleged duties and obligations, wrongfully, carelessly, and negligently failed to safely keep and care for and give medical attendance to Downes, and so keep and restrain him that his body should suffer no injury, and his life should be preserved from injury which he might produce by his own conduct and actions; that the defendant did not have the room where Downes was confined secure, and with a proper and sufficient guard, framework, or other suitable protection over the window, and so securely fastened that Downes, when confined in the room, could not tear away the framework or grating over the window, and throw himself therefrom; that the defendant did not keep Downes properly handcuffed, so that he could not do himself injury by tearing away the framework or bars and throwing himself out of the window, and did not keep some suitable person constantly in attendance upon him.

It is further alleged that the defendant, well knowing Downes' mental and physical condition, and that he was temporarily insane, violent, and liable to injure himself and others, and to throw himself from the window of the room where he was confined, removed the handcuffs from Downes' wrists, placed him, alone and unattended, in the padded room of the hospital, where insane persons are usually placed, and did not have the grating or framework over the window of such room properly constructed or properly secured and fastened, and that such framework or grating was made and fastened in such an insecure, unsafe, careless, and negligent manner that Downes, while insane, pulled down the ironwork and grating from the

window, and threw himself therefrom, falling a distance of about 35 feet to the pavement, thereby receiving such injuries as to cause his death on January 29, 1890.

At the conclusion of the evidence the court directed a verdict for the defendant, for the reason that the defendant was a charity, which could not be made liable for a tort.

The organization of the defendant had its origin in two deeds,—one executed February 3, 1859, by Walter Harper, and the other by Ann Martin, March 10, the same year. The lands therein described were conveyed to seven prominent citizens of Detroit in trust for the founding of a hospital. The purpose was stated in the deed by Mr. Harper to be—

" The institution, erection, and maintenance of a hospital in the city of Detroit, or in the immediate vicinity thereof, for the succor, care, and relief of such aged, sick, poor persons who shall apply for the benefit of the same, and who shall seem to my trustees hereof to be proper subjects for such aid as their means will enable them to afford."

The particular scheme for founding the hospital, and all the details, were left to be devised and controlled by the trustees. It also provided for organizing and permanently maintaining a school for the instruction of youth in the different arts and trades, after the manner of what is known in Prussia as the "Flintenberg School." The deeds also provided that, if the Legislature should enact a law enabling a corporation to be formed for the purposes named in them, the trustees might convey all the lands and funds to a corporation formed therefor.

The trust was accepted by the trustees, and under the law above referred to the trustees conveyed the property to the defendant, a corporation, May 17, 1863. Other bequests have been made to the defendant for the same purpose, which in one year amounted to over $100,000.

The corporators receive no compensation or dividends. It is purely an eleemosynary institution, organized and maintained for no private gain, but for the proper care and medical treatment of the sick. Hospital physicians and attendants are, and of course must be, paid. The receipts have not always been sufficient to meet ordinary expenses, and one year a private citizen gave $1,000 towards the deficiency. The law under which the defendant is organized recognizes it as a charity; exempts its property from taxation; provides that its funds shall be used faithfully and exclusively for the purposes of its organization, and that it may receive, by gift, grant, or devise, any property, but only for the purpose for which it is incorporated. It has no shares, and is not a stock corporation.

If the contention of the learned counsel for the plaintiff be true, it follows that the charity or trust fund must be used to compensate injured parties for the negligence of the trustees, or architects and builders, upon whose judgment reliance is placed as to plans and strength of materials; of physicians employed to treat patients; and of nurses and attendants. In this way the trust fund might be entirely destroyed, and diverted from the purpose for which the donor gave it. Charitable bequests cannot be thus thwarted by negligence for which the donor is in no manner responsible. If, in the proper execution of the trust, a trustee or an employé commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution. The trustees of this fund could not by their own direct act divert it from the purpose for which it was given, or for which the act of the Legislature authorized the title to be vested in the defendant. It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the

managers of the fund, or their employés, though such acts result in damage to an innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition.

The fact that patients who are able to pay are required to do so does not deprive the defendant of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not for private gain, but contribute to the more effectual accomplishment of the purpose for which the charity was founded. The wrong-doer, in a case of injury, but not the trust fund, must respond in damages. This proposition seems too clear to require argument or authority. It is not, however, inappropriate to remark that better facilities for the care, cure, and treatment of the sick, both of the poor and of those who are able to pay, are secured by the establishment of hospitals like that of the defendant. These facilities are increased by the receipt of money from those who are able to pay in whole or in part for the benefits received. Several hospitals of this character exist in this State, founded by private munificence. Obviously, they would not have been founded if their donors had known, or ever supposed, that their charitable purposes might be thwarted by the verdicts of juries for the negligent acts of those who must necessarily be employed in the execution of the charity. The following authorities appear to sustain the above position: *Hospital v. Ross,* 12 Clark & F. 507; *McDonald v. Hospital,* 120 Mass. 432; *Gooch v. Association,* 109 Id. 558; *Perry v. House of Refuge,* 63 Md. 20; *Railway Co. v. Artist,* 9 C. C. A. 14.

In what we have said, we are not to be understood as intimating any opinion as to whether there is any liability of the trustees for the alleged defect in the construction of the room where the deceased was confined, or of those

who were intrusted with his care and treatment. This question was not passed on by the court below, and we express no opinion upon it.

The judgment is affirmed.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.