JULIANO C. BASABO vs. THE SALVATION ARMY, INCOR-
PORATED.

DECEMBER 16, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Charitable Corporations. Negligence. Master and Servant.*
The doctrine of qualified immunity of a charitable corporation from liability
for damages occasioned by the negligence of servants, in cases where no
negligence appears in the selection or retention of the servant, does not
properly rest upon grounds of public policy, but can logically be rested in
most cases upon the doctrine that the physicians and surgeons in attendance
upon patients in hospitals, are not in general the servants of the charity in
the true sense of the relation of master and servant, but become and remain
the servants of the patient and the full duty of the charity has been per-
formed if it has exercised due care in the selection of competent persons
for such service.

(2)  *Charitable Corporations. Negligence. Master and Servant.*
*Glavin* v. *Rhode Island Hospital*, 12 R. I. 411, examined and affirmed and the
principles established by it fully stated.

(3)  *Charitable Corporations. Negligence. Master and Servant.*
A charitable corporation is liable for injuries to third persons caused by the
negligence of its servants in the care and management of its horses and
teams, while employed for its purposes, even though there has been no lack
of care or diligence on its part in the selection or retention of such servants.

TRESPASS ON THE CASE for negligence.  Certified under
Gen. Laws, 1909, cap. 298, § 5.

PARKHURST, J.   This is an action at law by the plaintiff
for the death of his minor daughter alleged to have been due
to the negligence of a servant of the defendant.   To this
declaration the defendant demurred on the ground that the
defendant corporation was described in said declaration as a
charitable and eleemosynary corporation, and that it was as
such not liable for the torts of its servants and agents.
After arguments upon the demurrer had been heard in the
Superior Court, the case was certified to the Supreme Court
for the determination of the question raised by said demurrer,

as being a question of such doubt and importance, so affecting the merits of the controversy that it ought to be determined by the Supreme Court before further proceedings, under the provisions of Chap. 298, Sec. 5 of the General Laws of 1909.

The question certified was framed on the language descriptive of said defendant corporation used by the plaintiff in his amended declaration, and is as follows:   "Is a corporation which is lawfully under its charter and in accordance with the purposes therein prescribed and authorized, doing business in the city of Providence, for the purposes of distributing charity and assistance, and supplies of food and clothing and medicine to persons needy or sick or suffering in said Providence, and for the purposes of giving religious entertainments and instructions in said Providence and improving the morality of the people living in said city, and for all said purposes employing divers horses and teams and servants and agents, in and about the streets and highways of said Providence, in collecting clothing, food, supplies, medicines and charities, and in distributing the same and for its other purposes, liable for injuries to persons caused by the negligence of such servants and agents in the care and management of said horses and teams while employed for such purposes, where it is not shown or alleged that there has been any lack of care or diligence on the part of such corporation in the selection or retention of such servants or agents?"

The defendant's counsel contends that, under the facts stated in the question above quoted, the defendant is a charitable corporation, as to which no dispute is made by the plaintiff's counsel; and we are of the opinion that the defendant is a charitable corporation in accordance with definitions so often repeated in the cases that no citation of authority is necessary.

The defendant's counsel further contends that, as such charitable corporation, it is not liable for the torts or negligence of its servants or agents, where, as is shown by the

question, it has not been guilty of negligence in the selection or retention of its servants or agents, and where there is no duty undertaken requiring the exercise of special care or skill such as that of a physician or surgeon.

And the defendant's counsel cites numerous cases in support of its contention; but it will be found upon examination of the cases cited, where it has been held that a charitable corporation or institution is not liable, that the great majority of them are cases where suit was brought by a patient or inmate of the hospital or institution, who was receiving the benefit of the charity at the time of the alleged injury.

Some of the cases cited absolutely deny the liability of a charitable corporation in any event to pay damages for injuries arising from the negligence of its servants or agents, either to a patient or inmate or to a third party, on the ground of public policy, saying (as in *Fire Ins. Patrol* v. *Boyd, infra.,*) that "it would be against all law and all equity to take those trust funds, so contributed for a special, charitable purpose, to compensate injuries inflicted or occasioned by the negligence of the agents or servants" of the charity; and arguing that, if such damages were to be allowed to be paid out of the trust funds, it would tend to destroy the charity, and to discourage the giving of money or other property for the establishment of charities. *Fire Ins. Patrol* v. *Boyd.* 120 Pa. St. 624, 647; *Gable* v. *Sisters of St. Francis*, 227 Pa. St. 254; *Whittaker* v. *St. Luke's Hospital*, 117 S. W. 1189 (Mo. App); *Jensen* v. *Maine Eye and Ear Infirmary*, 78 Atl. 898 (Maine); *Downes* v. *Harper Hospital*, 101 Mich. 555; *Pepke* v. *Grace Hospital*, 130 Mich. 493; (no negligence shown but approves *Downes* case); *Perry* v. *House of Refuge*, 63 Md. 20; *Parks* v. *Northwestern University*, 218 Ill. 381, *Abston* v. *Waldon Academy*, 118 Tenn. 24; *Adams* v. *University Hospital*, 122 Mo. App. 675.

Other cases cited, while arguing along the same general lines of public policy, limit the exemption of charitable corporations from liability for injuries occasioned by the negligence of physicians, surgeons, nurses and servants and

agents, to cases where there has been no negligence on the part of the defendants in the selection or retention of such persons,—*Hearns* v. *Waterbury Hospital,* 66 Conn. 98; *Union Pacific R. Co.* v. *Artist,* 19 U. S. App. 612; 60 Fed. 365; *Van Tassell* v. *Manhattan Eye and Ear Hospital,* 15 N. Y. Supp. 620; *Eighmy* v. *Union Pacific R. Co.,* 93 Ia. 538; *Plant System &c.* v. *Dickerson,* 118 Ga. 647; *Railway Co.* v. *Buchanan,* 126 Ky. 288; *McDonald* v. *Mass. General Hospital,* 120 Mass. 432; *Benton* v. *City Hospital,* 140 Mass. 13; *Farrigan* v. *Pevear,* 193 Mass. 147; *Thornton* v. *Franklin Square House,* 200 Mass. 465.

We think these latter cases must be regarded as entirely inconsistent with the general proposition of the exemption of charitable corporations on grounds of public policy set forth in the previous cases; as was said in reference to many of these cases by Gaynor, J., in *Kellogg* v. *Church Charity Foundation,* 128 App. Div. (N. Y.) 214, at p. 217; "In many if not most of the cases a ground for the non-liability for the torts of agents or servants of charitable institutions is that to pay damages for such torts would be a diversion of their funds from the trust purposes for which they are donated by the charitable, and thus a contravention of the trust, and that as such institutions have no other funds it would be futile to allow judgments to be taken against them in such cases.   But the opinions of the judges in these same cases almost invariably except cases where the agent or servant was incompetent and there was negligence in his selection; failing to take note that it would be as much a diversion of the trust funds to pay damages for the tort of negligence in selection as for any other tort.   If the rule exists it must necessarily apply to all torts and in all cases. The only support for the argument that it does exist is found in the remarks of judges in certain rather old English cases, which were repudiated in later cases, and never had a direct application to actions of tort against charitable corporations such as are now common.   It is true that an action does not lie against a trustee under a will, or the like,

as such, for his torts or those of his servants in the affairs or administration of the trust.    He has to be sued individually; but the reason is purely technical, and the courts allow the judgment against him individually for damages to be paid out of the trust funds, if he was free from wilful misconduct in the tort.    No rule, therefore, that trust funds may not be used to pay damages for torts in the administration of the trust exists even in the case of ordinary express trusts, let alone in the general trusts of charitable corporations (*Powers v. Mass. Homeopathic Hospital*, 109 Fed. Rep. 294; *Bruce* v. *Central Meth. Ep. Ch.*, 147 Mich. 230; *Hewett* v. *Association*, 73 N. H. 556).    The position of such a corporation in respect of its torts would seem to be the same as that of an individual carrying on similar charitable work with donated funds or with his own funds.    I do not understand that if my servant, sent out by me on an errand of mercy or charity, negligently runs over one in the street, I am not liable for his act." These views were approved by the Court of Appeals of New York (although the decision was reversed on other grounds), in *Kellogg* v. *Church Charity Foundation*, 203 N. Y. 191, 194.

We are of the opinion that the doctrine of the absolute exemption of charitable corporations is very much weakened by the position taken by the courts in these later citations, and is practically repudiated by them whatever general remarks the courts may have made in regard thereto, when the same are submitted to a careful and logical consideration. And this is all the more apparent when we consider the doctrine laid down in *Powers* v. *Massachusetts Homeopathic Hospital*, 109 Fed. 294, where, after a very careful review of the authorities up to the date of decision (1901), the U. S. Circuit Court of Appeals repudiated the doctrine of general exemption on the ground of public policy, and placed the exemption of the defendant in the case at bar, where it was sued for negligence of a nurse by a patient injured, upon the ground that (p. 303): "One who accepts the benefit either of a public or of a private charity enters into a relation which exempts his benefactor from liability for the negli-

gence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants. To paraphrase the illustration put by the learned judge before whom this case was tried, it would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. Were the heart and means of that Samaritan so large that he was able, not only to provide for one wounded man, but to establish a hospital for the care of a thousand, it would be no less intolerable that he should be held personally liable for the negligence of his servant in caring for any one of those thousand wounded men. We cannot perceive that the position of the defendant differs from the case supposed. The persons whose money has established this hospital are good Samaritans, perhaps giving less of personal devotion than did he, but, by combining their liberality, thus enabled to deal with suffering on a larger scale. If, in their dealings with their property appropriated to charity, they create a nuisance by themselves or by their servants, if they dig pitfalls in their grounds and the like, there are strong reasons for holding them liable to outsiders, like any other individual or corporation. The purity of their aims may not justify their torts; but, if a suffering man avails himself of their charity, he takes the risks of malpractice, if their charitable agents have been carefully selected."

The same doctrine was hinted at, though not fully developed in the case of *Hearns* v. *Waterbury Hospital*, 66 Conn. 98 (1895), *supra*, on p. 125, where it says: "Such patient, who may be injured by the wrongful act of a hospital servant, is not a mere third party, a stranger to the transaction —he is rather a participant." So in *Downes* v. *Harper Hospital*, 101 Mich. 555 (1894) *supra*, the court seems to recognize this same principle on pp. 559, 560, where it says: "It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employees, though such acts result in damage

to an innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition."

Certain other cases have been cited on behalf of the defendant, which relate solely to the denial of the right of recovery for injuries arising from negligence of agents and servants of public institutions, some of which are hospitals, some penal or reformatory institutions, where the functions performed are those of a state or of a municipal corporation, and where the ground of exemption is that the defendant is performing a public function of the state, or of a municipal corporation, and shares the immunity of the state or of such municipal corporation, from suit. *Benton* v. *City Hospital,* 140 Mass. 13 (in one aspect); *Noble* v. *Hahnemann Hospital,* 98 N. Y. Supp. 605; *Williamson* v. *Louisville Industrial School, etc.,* 95 Ky. 251; *Corbett* v. *St. Vincent's &c.,* 177 N. Y. 16.

The case of *Fordyce, et al.* v. *Women's C. N. Library Assn.* (Ark.) 96 S. W. 155, cited by defendant is to the effect that the real estate of a charitable corporation dedicated to charitable uses cannot be sold under execution on a judgment against the corporation.

These latter cases are not in point in this inquiry.

We have referred at some length to the above cases, which are cited on behalf of the defendant, in order to classify them, and in the endeavor to show that the doctrine of the general immunity of charitable corporations from liability for damages occasioned by the negligence of servants and agents on grounds of public policy is not so widely held as was contended in argument, but, in its broadest sense, is confined to seven states, from which the cases first referred to are taken; and that the doctrine of qualified immunity, in cases where no negligence appears in the selection or retention of agents or servants, does not logically rest upon grounds of public policy, as somewhat loosely argued in the second list of cases, above referred to, but could properly and logically be rested in most cases upon the doctrine that the physicians and surgeons in attendance upon patients in

hospitals or the nurses who are under the direction of such
(1) physicians or surgeons, are not in general the servants of the
defendant charity in the true sense of the relation of master
and servant, because, as to the nature and manner of their
services they are not under the direction of the defendant;
but that they become and remain the servants of the patient
so long as they are in attendance upon such patient; and that
the full duty of the defendant charity has been performed if
it has exercised due care in the selection of competent persons
for such service.

It has been suggested on behalf of the defendant that
the principles set forth by this court in *Glavin* v. *Rhode
Island Hospital,* 12 R. I. 411, are not applicable in the de-
cision of the case at bar and should not be applied; and that
in view of the numerous decisions of other courts, rendered
since that case was decided, this court should not adhere to
that decision.    That case has been carefully re-examined in
the light of all the cases cited by the parties hereto and of
some other cases which are cited by neither party; and this
court sees no reason to modify the conclusions reached in
said decision or in any respect to recede from them or to
doubt their correctness, upon the facts of that case as re-
ported.    It is true that in many of the cases decided by other
courts since 1879, the *Glavin* case has been referred to; in
some it has been criticised; but in none of them has it been
fully and correctly stated; nor do we find any case which is
quite on all fours with it.    As we have already indicated
above, in speaking of the relation between a charitable hos-
pital corporation and its physicians and surgeons, that such
relation is in general not that of master and servants, we
find in the *Glavin* case (12 R. I. p. 423) the following dis-
cussion:    "It is quite conceivable that a corporation might
not agree to do more than furnish hospital accommodations,
leaving the patient to find his own physician or surgeon.    In
such a case the corporation would plainly not be liable for the
torts of the physicians or surgeons; for in such a case they
would not be its servants and it would not have assumed any

responsibility in their selection.    But that is not this case.

(2) Here the physicians or surgeons are selected by the corporation or the trustees.    But does it follow from this that they are the servants of the corporation?    We think not.    If A. out of charity employs a physician to attend B. his sick neighbor, the physician does not become A.'s servant, and A., if he has been duly careful in selecting him, will not be answerable to B. for his malpractice.    The reason is, that A. does not undertake to treat B. through the agency of the physician, but only to procure for B. the services of the physician.    The relation of master and servant is not established between A. and the physician.    And so there is no such relation between the corporation and the physicians and surgeons who give their services at the hospital.    It is true the corporation has power to dismiss them; but it has this power not because they are its servants, but because of its control of the hospital where their services are rendered. They would not recognize the right of the corporation, while retaining them, to direct them in their treatment of patients.

"But though the relation of master and servant cannot be said to exist between the hospital and the physicians and surgeons attendant on it, the hospital does nevertheless assume a responsibility, in that it uses its own judgment, or that of its trustees, in selecting them, and impliedly, therefore, undertakes to exercise reasonable care to get such as are skillful and trustworthy in their professions.    A patient. has a right to rely on the exercise of such care, and consequently if, through the neglect of the hospital to exercise it, he receives an injury, he is entitled to look to the hospital for indemnity, unless the hospital enjoys some extraordinary exemption from liability.

"In the case at bar, however, the injury was not received from a physician or surgeon, but from a surgical interne, and it may be that a surgical interne stands on a different footing. There are some cases of minor importance in which the internes are allowed to act as physicians and surgeons; and in such cases I think that their relation to the corporation does

not differ from that of a visiting physician or surgeon.   But
the internes act in still another capacity.   The corporation
undertakes to furnish physicians and surgeons for all kinds
of cases, including the most critical.   It has a regular staff
of physicians and surgeons.   But inasmuch as these are not,
like the internes, constantly in attendance at the hospital
they must frequently be sent for.   The corporation under-
takes to send for them, and of course it must do it through an
agent.   The internes are the persons appointed to perform this
duty for it.   A rule of the hospital prescribes that in all
cases requiring immediate and important action, in all doubt-
ful cases, and in all cases requiring an immediate operation,
the interne shall send for the surgeon of the day, and, if he
cannot be found, for one of the other surgeons.   Here then
we have the relation of principal and agent, or master and
servant.   If the interne neglects to call the surgeon in the
class of cases designated, his neglect is the neglect of the
corporation.   Now the plaintiff contends that this injury
was such that under the rule a surgeon should have been
immediately sent for, and that the interne's neglect to do it
cost him his arm.   He also contends that the corporation
did not use proper care in selecting the interne, who was in-
competent for his position, and thereby he suffered the injury
complained of.   He contends that he was entitled to recover
on both these grounds, and if the evidence was sufficient
to establish them, we think that he was entitled to recover
on both grounds, unless the hospital enjoys some peculiar
immunity.

"This brings us to the important question whether the
hospital does enjoy any peculiar exemption from liability.
The claim that it enjoys such an exemption rests upon two
grounds: to wit, on the ground of public policy, and on the
ground that the hospital had no funds except such as are
exclusively dedicated to the charitable uses for which it was
established, and which therefore cannot be applied to in-
demnify a patient who has been injured by the negligence
or malpractice of a physician or surgeon, or of a medical or
surgical interne.

"The first ground is the ground on which the plaintiff was nonsuited. The argument is that hospitals, like the Rhode Island Hospital, are a public benefit; but if they are liable for the torts of the physicians or surgeons attendant on them, or of the medical or surgical internes, or of their nurses and other servants, people will be discouraged from voluntarily contributing to their foundation and support, and therefore public policy demands that they shall be exempted from liability. In our opinion the argument will not bear examination. The public is doubtless interested in the maintenance of a great public charity, such as the Rhode Island Hospital is; but it also has an interest in obliging every person and every corporation which undertakes the performance of a duty to perform it carefully, and to that extent, therefore, it has an interest against exempting any such person and any such corporation from liability for its negligences. The court cannot undertake to say that the former interest is so supreme that the latter must be sacrificed to it. Whether it shall be or not is not a question for the court, but for the legislature."

The court then proceeds to a critical examination of the earlier authorities in England upon which it was supposed that the doctrine of the absolute immunity of trust funds was founded, and shows, satisfactorily to this court at least, that such doctrine of absolute immunity has no logical foundation. The *Glavin* case is peculiar in this, that, while by the rules of the defendant corporation it was provided that "in all cases requiring immediate and important action, in all doubtful cases, and in all cases requiring an immediate operation, the interne shall send for the surgeon of the day, and, if he cannot be found, for one of the other surgeons." (12 R. I. p. 425); the case shows that this was not done; but that after the abortive attempts of an incompetent interne to stop the hemorrhage by ligating certain arteries and after the placing of a tourniquet upon the arm to stop the hemorrhage, so tightly as to stop the circulation, the patient was left in this condition for nearly seventeen

hours before the arrival of a surgeon who was skillful enough to ligate the arteries; whereby the injury complained of, resulting in gangrene and loss of the arm, was caused.  We find no such case among all the numerous cases cited, nor do we find that any court in referring to the *Glavin* case has adequately set forth the peculiar features of the negligence complained of as the cause of the injury.  The *Glavin* case thus stands for four things; *first,* it sets forth the true relation of a charitable corporation to the skilled attendants, such as physicians, surgeons and nurses, whose services are furnished to its patients, showing that such skilled attendants are not in general the servants of the corporation, in that they are not under the control of the corporation as to their treatment of patients, and that, if they are selected with due care, their negligence is not the negligence of the corporation; and we are of the opinion that upon this principle, in most of the cases cited relating to such corporations, their immunity from responsibility for damages might have been more logically and properly founded; *second,* that there are certain duties to patients which are corporate duties, such as the exercise of due care in the selection of skilled and competent attendants and the exercise of due care in the summoning of such attendants in a case where the condition of the patient requires such service, and that the agent of the corporation, whose duty it is to summon such attendants is in such case the agent and representative of the corporation, whose negligence is deemed to be that of the corporation itself; *third,* that the doctrine of the general immunity of a charitable corporation from liability for damages, on the ground of public policy as involving the diversion of trust funds from the purposes of the trust, has no logical foundation; *fourth,* that where such a corporation has funds available for the general purposes of the corporation, it may apply such funds to pay damages for which it is held liable "notwithstanding the trusts for which they are held, because the liability is incurred in carrying out the trusts and is incident to them," (p. 428) even though certain property such as its

real estate may be "subject to so strict a dedication that it cannot be diverted to the payment of damages" (p. 429).

So much for the general principles of liability as they are to be and have been applied as between a charitable corporation and its beneficiaries.

When we come to the question of liabilities of such corporations for their negligence or the negligence of their servants or agents resulting in injuries to third parties who are not in the relation of inmates, patients or beneficiaries, we find comparatively little clear authority. Among all the cases heretofore referred to, where charitable corporations have been held to be immune from liability, we find only one clear case which declares such immunity in relation to injury suffered by a third party by reason of the negligence of its servants. This case is *Fire Ins. Patrol* v. *Boyd*, 120 Pa. St. 624, where it appeared that plaintiff's intestate, while walking on the street, was killed by the negligent act of a servant of the patrol in throwing a bundle of tarpaulins, which had been used to cover goods at a fire, from a window in the building where the fire had occurred, upon Boyd the plaintiff's intestate. The court held that the *Fire Ins. Patrol* was a charity and not liable under the doctrine of general immunity heretofore discussed (and which this court has repudiated). This case is to some extent offset by the case of *Newcomb* v. *Boston Protective Dept.*, 151 Mass. 215, where a similar corporation was sued in tort for personal injuries occasioned to the plaintiff, a cab driver, by a collision between his cab and a wagon of the defendant, through the alleged negligence of the driver of the wagon, a servant of the defendant. The Massachusetts court held that the defendant was a private corporation, not a charity, and attempted to distinguish the defendant from the *Fire Ins. Patrol* in the previous case, but we think the distinction is not well made out. In the *Newcomb* case the plaintiff was held entitled to recover. We are of the opinion that the *Newcomb* case, in holding that the defendant was not a charity, is a better reasoned case than that of *Fire Ins. Patrol* v. *Boyd, supra*.

Certain other cases which hold that such charitable corporations are not liable for injuries to employees due to negligence in having machines out of order, or in not giving proper warning or instruction are *Whittaker* v. *St. Luke's Hospital*, 117 S. W. (Mo. App.) 1189, where the doctrine of general immunity is held; *Cunningham* v. *Sheltering Arms*, 115 N. Y. S. 576, and *Farrigan* v. *Pevear*, 193 Mass. 147, in which two latter cases the plaintiffs appear to have been inmates, and beneficiaries of the charity. In the case of *Noble* v. *Hahnemann Hospital*, 98 N. Y. Supp. 605, where the plaintiff sued for injuries suffered by reason of the negligence of the driver of defendant's ambulance in colliding with a wagon in which the plaintiff was sitting, the defendant was a charity and was representing the city in the performance of a municipal function, and was held not liable on both grounds. And see *Kellogg* v. *Church Charity Foundation*, 128 App. Div. 214, 203 N. Y. 191, 194 (*supra*), where under similar circumstances the liability of a charitable corporation was sustained.

With these exceptions, which we do not find to be of even persuasive authority in the case at bar, we find that the adjudicated cases which have dealt with the question of the liability of a charitable corporation to its servants or to third parties for injuries arising from negligence, have held in favor of the plaintiffs.

In the case of *Hewett* v. *Association*, 73 N. H. 556 (1906), a nurse in the employ of the defendant, a charitable corporation, who was receiving wages and instruction in consideration of her services as such nurse, was placed by the superintendent in charge of a patient suffering from diphtheria, of which the superintendent had notice, but neglected to give notice to the nurse. The nurse, not knowing the nature of the case, took the disease and for the injury to her caused thereby brought suit. She was held entitled to recover. Exemption from liability was claimed by the defendant on the same grounds of exemption as set forth in many of the cases above cited. After examining the statutes of New Hamp-

shire under which the defendant was incorporated, and finding therein no express exemption from liability, the court proceeds to a careful examination of the cases holding such corporations exempt from liability on general grounds of public policy; and the court finds from the evidence that the plaintiff was a servant or employee of the defendant corporation. In stating its conclusions upon this branch of the case the court says, page 566, as follows: "If she had been employed by an individual to attend a member of his family afflicted with small-pox of which he had knowledge, but of which he did not inform her, and she took the disease without fault on her part and suffered damage therefrom, it would not be seriously denied that he was guilty of actionable negligence in not informing her of the danger to which he exposed her. It was his duty arising from his employment of her, or from the contractual relation of master and servant existing between them, to warn her of the danger incident to the service which he knew or under the circumstances ought to have known, and of which he knew she was ignorant, though in the exercise of ordinary care. And this duty is a non-delegable one. *Hamel* v. *Company, ante*, p. 386; *English* v. *Amidon*, 72 N. H. 301; *Wallace* v. *Railroad*, 72 N. H. 504, 514. To say that a similar duty was not imposed upon the defendant for the benefit and protection of the plaintiff, because it is a charitable corporation, is to relieve such corporation from the reasonable obligation of exercising the care ordinarily required of, or contractually assumed by, men in general in the prosecution of their legitimate business. The necessity for such an exceptional holding is not apparent. Since the property of the defendant is held for the general purpose of maintaining a hospital without other specific limitation, it is no more exempt from being appropriated to the payment of damages occasioned by the negligence of the hospital than is the property of an individual, which he holds for commercial or charitable purposes, for the consequences of his negligence. In conducting the affairs of a hospital, its officers and agents are

as liable to commit acts of negligence as are the officers and agents of a railroad or other business corporation. Men in general are not uniformly careful. Experience shows that negligence—the failure to exercise ordinary care—is to be expected when men engage in industrial pursuits. It may, not inappropriately, be said to be necessarily incidental in the accomplishment of most practical results through the agency of men. The donors of the defendant's property for hospital purposes were not ignorant of this fact, and are presumed to have given the trust property knowing that it might be required for the liquidation of claims in tort as well as for claims in contract, incurred in carrying out the purposes of the corporation. Indeed, its conceded authority to contract for the employment of nurses and other necessary agents would seem to include power to respond in damages for all breaches of such contracts, one essential or incidental element of which is its duty to exercise care as well as its duty to pay the stipulated compensation. No conditions were imposed upon the defendant, either by its charter or by the donors of its property, by which the contracts of employment it was obliged to make with its servants should have a different effect from that usually given to such contracts, or that the relations between it and its employees should be legally different from those usually subsisting between master and servant. There is, therefore, no substantial reason for holding that it did not owe the duty to the plaintiff of warning her of the dangers of her employment, under the law as applied to the ordinary relation of master and servant. In this respect, the legislature has not invested it, either expressly or inferentially, with peculiar powers."

This case was not cited by either party in the case at bar, but it is evidently referred to in the defendant's supplemental brief where it is said: "In New Hampshire a charitable corporation is now liable for the acts of its servants and agents to the same extent as a business corporation, and there are decisions to this effect, but they are based solely upon the New Hampshire statute, which declares in plain

terms that such corporation shall be so liable. These decisions in New Hampshire are, therefore, not in point upon this question, although they have been cited by the Michigan and New York courts in the decisions above referred to." There is no ground for such a statement. The New Hampshire Supreme Court refers to the statutes only to show that the defendant was incorporated as a charitable corporation and that there was no express statutory exemption from liability. The decision of the case is based entirely upon general considerations as above set forth.

In *Bruce* v. *Central M. E. Church*, 147 Mich. 230 (1907), two members of the court found that the defendant was not a charitable corporation and therefore not exempt. But six members of the court agreed that the defendant was a charitable corporation, and proceeded to examine the doctrine of the exemption of such charitable corporation from liability for negligence. In this case plaintiff was an employee of a contractor engaged in decorating the church building and sued for injuries sustained by reason of the breaking of defective scaffolding furnished by the agents of the defendant. The majority opinion, after setting forth the reasons for holding the defendant to be a charitable corporation, proceeds to the examination of the case of *Downes* v. *Harper Hospital*, 101 Mich. 555 (*supra*), where some of the language used was consistent with the doctrine of general exemption on grounds of public policy; and says, as follows: "I conclude, therefore, that we cannot hold the principle of the decision in *Downes* v. *Harper Hospital*, *supra*, inapplicable, upon the ground that the funds of the church are not charitable trust funds.

"This leads us to the inquiry: Is there any other ground upon which we should hold *Downes* v. *Harper Hospital* inapplicable? There is this distinction between *Downes* v. *Harper Hospital* and this case, viz., in the *Downes Case* plaintiff was a patient in defendant's hospital, and, therefore a beneficiary of the charitable trust administered by the

hospital corporation, while in this case he was an employee of defendant's contractor, and not a beneficiary of the trust administered by defendant.   If we hold that the principle of the *Downes Case* applies to the case at bar, we must declare that that principle exempts a corporation administering a charitable trust from all liability for the torts of its agents, and, as a corporation can act only by and through its agents,. that it is exempt from all liability whatsoever for torts. What is the principle underlying the *Downes Case?*   Does it exempt a corporation administering a charitable trust from all liability for torts?   Those who answer this question in the affirmative cannot support their position by appealing to the reasoning of the opinion in that case.   While that opinion says: 'The law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution,' the pith of its reasoning in my judgment is contained in the following words:   'It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employees, though such acts result in damages to an innocent *beneficiary.*   Those voluntarily accepting the benefit of the charity accept it upon this condition.' "   And referring to a large number of the cases heretofore cited, the opinion goes on (p. 252):   "In the latest of these cases (*Powers* v. *Homeopathic Hospital*)—the opinion is exhaustive and elaborate, and discusses nearly all the authorities—it is held that the ground upon which liability is denied is that of assumed risk; the court saying: 'One who accepts the benefit of a public or of a private charity, enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity, at any rate if the benefactor has used due care in selecting those servants.'

"If this is correct, it is scarcely necessary to say that that principle has no application to the case at bar.   Is it correct? The ground upon which liability is denied in nearly all the foregoing cases is that stated in the *Downes Case,* viz., that

it would thwart the purpose of the trust; that is, it would oppose the will of the founder of the trust to pay from the trust funds damages caused by an agent's torts. It is entirely logical to say that this will must be recognized by beneficiaries of the trust. It may justly be said that the benefit of the trust is extended to them and accepted by them upon the implied condition that they shall recognize that will. By becoming beneficiaries they agree to recognize it. But I can see no ground upon which it may be held that the rights of those who are not beneficiaries of a trust can in any way be affected by the will of its founder. The rights of such persons are those created by general laws, and the duties of those administering the trust to respect those rights are also created by general laws. The doctrine that the will of an individual shall exempt either persons or property from the operation of general laws is inconsistent with the fundamental idea of government. It permits the will of the subject to nullify the will of the people. Nor can I conceive any ground upon which a court can hold that effect can be given to that will when it relates to property devised or conveyed for the purpose of a charitable trust. Such a holding must rest upon the argument that the advantages reaped by the public from such trusts justify the exemption; that is, as applied to this case, the advantages to the public justify defendant's exemption from liability for wrongs done to individuals. If this argument is sound— and its soundness may be questioned, for there are those who will deny that the advantages to the public justify the wrong to the individual—it should be addressed to the legislative, and not to the judicial, department of the government. It is our duty as judges to apply the law. We have no authority to create exemptions or to declare immunity." The opinion then further very carefully examines the underlying authorities in the English cases of *Duncan* v. *Findlater*, 6 Clark & F. 894, and *Mersey Docks* v. *Gibbs*, 11 H. L. Cas. 686, with the subsequent cases and shows that the doctrine stated in many of the cases that those administering a trust fund are

not responsible for the torts of their agents, because damages for such torts cannot be paid from the trust fund, is not well founded, as this court has already held in the *Glavin* case, *supra*. And finally, in disposing of this question, the opinion says, page 255: "I conclude from this reasoning that corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and cannot, therefore, claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such a tort, and that *Downes* v. *Harper Hospital* and other similar cases are consistent with this rule. They rest upon the principle, correctly stated in *Powers* v. *Homeopathic Hospital, supra*, viz., that the beneficiary of such charitable trust enters into a contract whereby he assumes the risk of such torts. It is not surprising that years should have elapsed before the correct legal principle governing these cases was announced in *Powers* v. *Homeopathic Hospital*. The discovery of correct legal principles, like the discovery of scientific and social truths, requires time and patient investigation."

In *Hordern* v. *Salvation Army*, 199 N. Y. 233 (1910), the action was brought to recover for personal injuries sustained by the plaintiff, a journeyman mechanic who was engaged in making repairs upon a boiler upon defendant's premises, through the defective condition of a runway or staging leading from a door in the boiler room. The defendant claimed exemption from liability as being a religious or charitable corporation. The court cites many of the cases above referred to, where such corporations have been held to be totally immune from liability, as well as those where they have been held immune on the ground that they were performing governmental functions; and also those where the immunity is made dependent upon the relation the plaintiff bears to the defendant, and says, p. 237: "In all it is recognized that the beneficiary of a charitable trust may not hold the corporation liable for the neglect of its servants. This is unquestionably the law of this State." (citing cases).

And after discussing certain other cases in New York, where defendant charitable corporations have been held liable to third persons for negligence, repudiates the doctrine of the non-liability of trust funds for payment of damages arising from negligence, citing with approval from *Hewett* v. *Association, supra, Bruce* v. *Central M. E. Church, supra, Powers* v. *Mass. H. Hospital, supra,* and concludes, "We can add nothing to the force of this reasoning, but simply express our concurrence therein, as well as in the argument of Judge Lowell."

This case was subsequently approved by the New York Court of Appeals in *Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191, 194, where the court says: "It must now be regarded as settled that a charitable corporation is not exempt from liability for a tort against a stranger because of the fact that it holds its property in trust to be applied to the purposes of charity."

In *Kellogg* v. *Church Charity Foundation,* 128 App. Div. (N. Y.) 214 (1908), we find circumstances somewhat analogous to those in the case at bar. There a driver of an ambulance belonging to the defendant, a charitable hospital, negligently ran down a person who was traveling on a highway, and who was in the exercise of due care. Judge Gaynor made a careful review of the authorities, classifying them as to the reasons assigned for the immunity of charitable corporations from liability; and we have already quoted from this opinion where the doctrine of the immunity of trust funds from liability for damages is repudiated. It is sufficient to say that the conclusion of the court is that a charitable institution is liable for the negligence of its servants resulting in injury to persons who are not patients or beneficiaries.

These doctrines were approved by the New York Court of Appeals in *Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191, 194, *supra,* although in that court the judgment of the Appellate Division was reversed on the ground that the evidence showed that the ambulance driver was not the

servant of the defendant but was the servant of the livery stable keeper who furnished the horse and driver for the use of the defendant. See, also, *Gartland* v. *N. Y. Zoological Society*, 135 App. Div. 163; *Donaldson* v. *Commrs. of Hospital*, 30 New Br. 279. It is to be noted also, that while it was held by the Supreme Judicial Court of Massachusetts in *McDonald* v. *Mass. General Hospital*, 120 Mass. 432 (1876), that a public charitable hospital was not liable for an injury to a patient caused by negligence of its agents, and this doctrine was approved in *Benton* v. *City Hospital*, 140 Mass. 13 (1885), and in *Farrigan* v. *Pevear*, 193 Mass. 147 (1906), yet the same court, in suits against religious and other charitable corporations, has, in several instances in contemporaneous cases, held the defendants liable for injuries to third parties arising from the negligence of agents and servants of the defendants. *Mulchey* v. *Methodist &c. Soc'y. et al.*, 125 Mass. 487 (1878); *Davis* v. *Central &c. Soc'y.*, 129 Mass. 367 (1880); *Smethurst* v. *Barton Square Church*, 148 Mass. 261 (1889); *Stewart* v. *Harvard College*, 12 Allen, 58 (1866). And while the court says in *Farrigan* v. *Pevear*, 193 Mass. 147, *supra*, at p. 149, that the question of the liability of a public charity for the negligence of its servants or agents does not appear to have been raised or decided in either the *Davis* case or the *Smethurst* case, it is remarkable that such ground of exemption was not suggested either by counsel or court, if the doctrine of exemption could by any possibility have been thought to apply in cases where the parties injured were third parties standing in no beneficiary relation to the defendants. We cannot believe that counsel in those cases would have failed to raise the question so recently decided in favor of defendants in the hospital cases, if they had not seen the distinction which we believe to exist between the two classes of cases.

(3)    In view of the principles above set forth, this court is of the opinion that both upon reason and upon authority, so far as the cases directly apply to the case at bar, the defendant corporation, although it is a charitable corporation, is liable,

as any other corporation, for injuries to third persons caused by the negligence of its servants and agents in the care and management of its horses and teams while employed for its purposes, even though it is not shown or alleged that there has been any lack of care or diligence on the part of the defendant in the selection or retention of such servants or agents. We believe that public policy does not require any such exemption from liability as is claimed by the defendant in this case, but on the contrary that such exemption would be contrary to true public policy. We are clearly of the opinion that the true legal relation of master and servant existed between the defendant and the drivers in its employ at the time of the alleged injury; and that just as such a servant has a lawful right to recover his stipulated wages for his services and to recover damages for breach of his contract of service on the part of his master, so also would he be entitled to recover for injuries due to the negligence of his master as in other cases of master and servant; and so also would his master be liable for his torts and negligence while in the service of the master as in any other case. It would, in our opinion, be manifestly unjust and contrary to public policy to hold that a person run over and injured on a public highway by a horse and wagon belonging to the defendant and driven by the defendant's servant, through the negligent acts of such servant, would not be entitled to recover against the master, but could only recover against the negligent servant; while a person injured under similar circumstances by the servant of an expressman, or the driver of a cab belonging to a liveryman, would be allowed to recover against the master. There is no reason or logic in the attempted distinction between the servant of the defendant and the servant of any other person or corporation.

We answer the question submitted to this court in the affirmative.

The papers in the case will be sent back to the Superior Court sitting within and for the counties of Providence and

Bristol, with our decision certified thereon, for further proceedings.

A. B. Crafts, for plaintiff.
Gardner, Pirce & Thornley, for defendant.
Henry W. Gardner, of counsel.