ST. PAUL'S SANITARIUM. v. WILLIAMSON.†

(Court of Civil Appeals of Texas. Dallas. Feb. 7, 1914. Rehearing Denied Feb. 28, 1914.)

1. CHARITIES (§ 45*)—HOSPITALS—LIABILITY FOR NEGLIGENCE.

Hospitals, organized to minister to all persons of all creeds, are liable for the negligence of their physicians and servants only when ordinary care has not been exercised in their selection and retention; and it is immaterial whether the patients injured were charity patients or paid the usual compensation for such services.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 80, 81, 102–104; Dec. Dig. § 45.*]

2. CHARITIES (§ 45*)—ACTIONS—EVIDENCE—SUFFICIENCY.

In a suit against a hospital, not operated for profit, for damages for injuries sustained by plaintiff's wife, who, after an operation, was placed in a bed in which there was a water bottle so hot that it severely burned her, evidence *held* sufficient to support a finding that the hospital did not exercise ordinary care in the selection of its servants.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 80, 81, 102–104; Dec. Dig. § 45.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by D. C. Williamson against St. Paul's Sanitarium. From a judgment for plaintiff, defendant appeals. Affirmed.

Wm. P. Ellison and Etheridge & McCormick, both of Dallas, for appellant. Jed C. Adams and C. F. Greenwood, both of Dallas, for appellee.

RASBURY, J. Appellee sued appellant for damages for personal injuries sustained by his wife while a patient in appellant's sanitarium, and upon trial by jury secured verdict, followed by judgment, from which this appeal is taken.

The grounds of negligence alleged were, in substance, that appellee's wife was operated upon successfully for a minor affliction by a physician selected by appellee, after which she was consigned to the authorities and nurses in charge of appellant's sanitarium, where appellee had engaged a room, with proper instructions as to the care to be used in nursing her, but that those in charge of the sanitarium, instead of observing such in-

---

structions, immediately after the operation took charge of appellee's wife, who at the time was unconscious, due to the administration of anæsthetics, placed her in a bed containing a bottle of hot water in such manner that the bottle of hot water rested under the left leg of appellee's wife, and negligently permitted same to remain there until the calf of the leg was almost entirely burned away, injuring the muscles and nerves of the leg, and affecting the bone, requiring a number of painful surgical operations, inducing subsequent blood poisoning, great suffering, and seriously and permanently injuring appellee's wife.

Appellant met the charge of negligence with the general denial and special plea that it was a private corporation organized under the laws of Texas wholly for benevolent and charitable purposes, and in pursuance of such purpose had erected and was maintaining in the city of Dallas a sanitarium wherein the members of the corporation were administering to the sick, infirm, and afflicted of all creeds and nations, nursing and caring for them, and restoring them to health as far as possible, and was so engaged at the time appellee's wife received her injuries. It was further alleged that the corporation had no capital stock, and that its members received no profit from the operation of the corporation, but that, on the contrary, all moneys derived from all sources, whether from pay patients, donations, bequests, or otherwise, were devoted to benevolent and charitable purposes, and for that reason was not liable for injuries received by an inmate thereof, while receiving the benefits of the charity, etc.

The record sustains the following essential facts: Appellant is a private corporation organized under the laws of the state of Texas, with authority to acquire and hold such real and personal property that may be necessary and appropriate for carrying out the purpose of its organization. It has no capital stock, and its membership may consist only of Sisters of Charity of the Society of Emmettsburg, Md., all or any of whom may be removed by their superiors. The purposes of the corporation are recited in the charter to be to build and maintain a hospital at Dallas, wherein to administer to the sick, infirm, and afflicted of all nations and creeds and to nurse and care for them and restore them to health, if possible. Such a hospital was built and was being maintained at Dallas at the time appellee's wife received her injuries. The hospital received patients who paid for their rooms, care, and nursing and patients who did not. None were refused care and nursing. The only income of the corporation, so far as the record discloses, is from those who pay for the care and nursing to be had at the sanitarium, but this has been sufficient to meet the interest on an original loan and reduce same materially, and to pay all expenses of maintenance, which is heavy, and permit the spending of something on betterments and other allied charities as well. The property owned by the corporation is valuable and the institution a large one, but no part of its income is spent other than in benevolent and charitable projects. The institution employs about 75 people in various capacities, who are paid. The institution also conducts a school for nurses. The Sisters of Charity connected with the institution, and who control and direct its affairs, receive only their food and clothing.

Appellee's wife was ill with some trouble that required a minor operation, and at the suggestion of her physician, who had been engaged to perform the operation, appellee called at appellant's sanitarium and made arrangements for a room to be occupied by his wife after the operation. The price demanded for the room selected by appellee was $20 per week, and for the use of which appellee paid at that rate in addition to a charge of $5 for the use of the operating room. On the day appellee's wife entered the sanitarium, she was successfully operated upon. After the operation the attending physician consigned appellee's wife, who at the time was under the influence of anæsthetics, to the care of Dr. Black, an interne, and Miss Suggs, a nurse, who placed her upon a stretcher and removed her from the operating room to the room engaged for her by her husband, the appellee. Just before the interne and the nurse reached the room assigned to appellee's wife, Pauline Nash, a girl about 12 or 14 years of age, and an employé of appellant, came into the room and placed a bottle of hot water beneath the bed covering and hastily left the room. At this time no one was in the room other than appellee. Very shortly afterwards Dr. Black, the interne, and Miss Suggs, the nurse, who were in charge of appellee's wife, entered the room with her in an unconscious condition and placed her in the bed beneath the coverings, and in a few minutes departed, leaving appellee alone with his wife. Very soon thereafter, however, Miss Fay, another employé of appellant, entered the room to attend appellee's wife. About 20 minutes after she entered the body of the patient, and particularly the left leg, began twitching and jerking, which attracted the notice of appellee. While appellee and Miss Fay were regarding the patient to ascertain the trouble, she exclaimed, "Oh, my leg!" In a short time the patient again repeated the exclamation, whereupon appellee directed Miss Fay to examine and see if anything was wrong. She did so, placing her hand under the bed covers, jerking same out at once. She then raised the covers, seized the bottle of hot water, and jerked it out. The bottle was so hot Miss Fay could not retain it in her grasp. The evidence sustains the allegations of the petition in reference to the serious and permanent injury resulting to appellee's leg by

being burned by the bottle and the pain she suffered as a result therefrom, and a recital of the same is unnecessary. The evidence in the record shows that it is customary, usual, and proper to warm beds intended for occupancy by patients undergoing operations by placing a bottle of hot water therein; the purpose being to increase the lowered circulation of the patient due to the operation. It is not proper, usual, nor customary to place in the bed a bottle of water so hot that it will burn the flesh of the patient in case of contact. The water in the bottle placed in the bed occupied by appellee's wife was that hot. If it is hot enough to burn the flesh, it is usual and customary for those in charge of the patient to either cover the bottle with cloths, remove same from the bed, or see that it does not come in contact with the patient. It is the duty of the nurses in charge of the patient to look after the proper placing of the bottle of hot water and to protect the patient against injury by contact in case the water is too hot. Neither Miss Suggs, who had charge of appellee's wife when she was placed in bed, nor Miss Fay, who took charge of her after being placed therein, were graduate nurses. They were pupil nurses, who are intrusted with such duties as the Sister, in charge of the floor to which they are assigned, think them capable of attending to. The girl, Pauline Nash, who placed the bottle of hot water in the bed to be occupied by appellee's wife, was employed to wash dishes and run errands. Sister De Sales, a Sister of Charity, and a member of appellant corporation, had charge of the floor on which appellee's wife had been assigned a room, as well as all the patients occupying rooms upon that floor. Before removing appellee's wife to her room, a request came from the operating room for a bottle of hot water to be placed in her bed; the request being made to Sister De Sales, who testified in reference thereto: "I gave a general order in the diet kitchen for some one to do that, without speaking to any one in particular; * * * just told them to put a hot water bag in room No. 11, being too busy to do it myself." Pauline Nash, who was employed in the diet kitchen, where the order was given by Sister De Sales, as we have stated, executed the order given by Sister De Sales. It was also in evidence in substance that Pauline Nash was permitted to place bottles of hot water in the beds of patients at the sanitarium, and that she was not competent for that purpose. Appellee's wife also testified that Pauline Nash confessed to her at her bedside, the day after she was injured, that she placed the bottle of hot water at the direction of the head nurse or head Sister. Drs. Tipton, Smoot, and Watson, all of whom had practiced in the sanitarium and had opportunity to observe Sister De Sales, gave it as their opinion that Sister De Sales was a competent nurse; also that it would be improper to place a bottle of water hot enough to burn the flesh so that it would come in contact with the patient. Nothing concerning the competency of Miss Suggs, Miss Fay, or Pauline Nash was proven by these physicians, or others.

Hon. Kenneth Foree, the district judge before whom the case was tried, instructed the jury that appellant was a charitable and benevolent institution as a matter of fact, and we think the evidence, without contradiction, supports the peremptory instruction.

In submitting the case to the jury, the court instructed them that if appellee's wife's injuries resulted from the failure of appellant to exercise ordinary care in the selection of its servants to find for appellee, but if appellant, on the contrary, did exercise ordinary care in such selection to find for appellant. The jury was also instructed to find for appellant in the event appellee did not exercise ordinary care in the selection of a physician. The verdict of the jury was against the claim of negligence in the selection of a physician by appellee, and no complaint is made of the manner of submitting that issue.

[1] Hence the case is here on assignments attacking the action of the court in submitting the case upon the issue of negligence of appellant in the selection of its servants; the contention being: First, that, since appellant is an institution of charity, it is, as a matter of public policy, not liable to a beneficiary of that charity for the negligence of its nurses in any event; and, second, if liable at all, it is only liable for failure to exercise ordinary care in the selection and retention of such nurses, and that the evidence in the instant case was insufficient to authorize the submission of the case on that theory. Counsel on both sides, on submission of the case, favored us with able oral arguments, and in their briefs on file have spared no effort in the citation of authorities, our appreciation of which it is proper to acknowledge.

Much has been written relating to the liability of incorporated and other charitable institutions for the negligence of their servants, and much space and considerable rivalry in the many able opinions written upon the subject has been given to the reason why such institutions do not in all cases come within the rule of respondeat superior, and, while many of the cases reach the same result, they do so by dissimilar reasoning. There is a line of well-considered cases which sustain the doctrine that such institutions may be made to answer in damages for injuries inflicted upon employés and third parties by the negligence of the corporation or institution, their managers, vice principals, or agents. Armendarez v. Hotel Dieu, 145 S. W. 1030; Basabo v. Salvation Army, 35 R. I. 22, 85 Atl. 120, 42 L. R. A. (N. S.) 1144; Hordern v. Salvation Army, 199 N. Y. 233, 92 N. E. 626, 32 L. R. A. (N. S.) 62, 139 Am. St. Rep. 889; Hewett v. Woman's Hospital

Aid Ass'n, 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496; Bruce v. Central Methodist E. C., 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, 11 Ann. Cas. 150. The holding in the case last cited seems, however, to be a departure from the rule announced by the same court in Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427.

There is another line of equally well-considered cases which in effect announce the rule that such institutions are, as a matter of public policy, exempt from all liability to either employés or third persons due to the negligence of their physicians, nurses, and servants; some of the cases being quite similar in the facts with the instant case. Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; Gable v. Sisters of St. Francis, 227 Pa. 254, 75 Atl. 1087, 136 Am. St. Rep. 879; Duncan v. Nebraska Sanitarium, 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. (N. S.) 973, Ann. Cas. 1913E, 1127; Jensen v. Maine E. & E. Infirmary, 107 Me. 408, 78, Atl. 898, 33 L. R. A. (N. S.) 141; Taylor v. Protestant Hospital Ass'n, 85 Ohio St. 90, 96 N. E. 1089, 39 L. R. A. (N. S.) 427; Adams v. University Hospital, 122 Mo. App. 675, 99 S. W. 453; Powers v. Mass. Homeopathic Hospital (C. C.) 101 Fed. 896; s. c., 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372. The court, in the case last cited, calls attention to the fact that it is not called upon to decide what would have been the liability of defendant upon allegation and proof of incompetency of the servant and knowledge of that fact on the part of the defendant.

It was formerly the rule in Rhode Island that charitable institutions were not only liable for their negligence in failing to select competent physicians and nurses, but were liable for the negligence of regularly employed physicians and nurses, charged with certain fixed duties, on the ground that such employés were the agents of the institution. Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 675. This doctrine was sustained and defended in Basabo v. Salvation Army, 35 R. I. 22, 85 Atl. 120, 42 L. R. A. (N. S.) 1144, although the negligence was that of a driver of a wagon being used by the Salvation Army in the delivery of food and clothing to the needy, sick, and suffering; the injuries being inflicted upon a third person. The rule, however, no longer prevails in that state. By legislative act such institutions were exempted from liability for the negligence of its servants. R. I. Gen. Laws 1896, c. 177, § 38; note 6 Cyc. 975.

There is yet another line of cases that do not concede entire exemption from the rule of respondeat superior, nor yet bring such institutions entirely within the rule, but hold to the rule that charitable institutions, such as appellant, in respect to the negligence of physicians, nurses, and servants, who are said not to be the agents of the institution, are liable only when it appears from all the facts and circumstances that the institution failed to exercise ordinary care in the selection and retention of such employés, and that in the application of the rule it is immaterial whether the patient upon whom the injury was inflicted be a beneficiary of the charity of the institution or one who is paying full consideration for his or her care and nursing. G., H. & S. A. Ry. Co. v. Hanway, 57 S. W. 695; Hanway v. G., H. & S. A. Ry. Co., 94 Tex. 76, 58 S. W. 724; Texas Central R. R. Co. v. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206; Arkansas Midland R. Co. v. Pearson, 98 Ark. 399, 135 S. W. 917, 34 L. R. A. (N. S.) 317; McDonald v. Mass. Genl. Hospital, 120 Mass. 432, 21 Am. Rep. 529; Union Pacific R. R. Co. v. Artist, 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 581; Hearns v. Waterbury Hospital, 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224.

An accepted authority tersely states the rule to be that "a charitable corporation is not liable for injuries resulting from the negligent or tortious acts of a servant in the course of his employment, where such corporation has exercised due care in his selection." 6 Cyc. 975.

It will be seen from the cases cited from this state that the rule here is that such institutions, with respect to patients within their walls or under their care, whether the patient be one on charity or one who pays, are liable for the negligence of their physicians, nurses, and servants only when it appears that ordinary care has not been exercised in their selection and retention; and that, with respect to injuries inflicted upon third persons and employés by the negligence of their managers, agents, and servants in the conduct of the institution, they come entirely within the rule of respondeat superior. Such being the rule in this state, and the court having submitted correct instructions to the jury, our duty narrows to an examination and analysis of the testimony for the purpose of ascertaining whether same supports the finding of the jury that appellant failed to exercise ordinary care in the selection and retention of those employés charged with the duty of caring for appellee's wife and in directing others to do so. We think it does.

[2] According to the testimony of all the witnesses who possessed any knowledge on the subject, while it was necessary and usual to place the bottle of hot water in the bed, it was attended with more or less possible injury to the patient, if managed improperly. From which it follows that it was the duty of those directing the placing of the bottle to have selected no person to perform that task not competent to anticipate injury to the patient by reason of the water being too hot. Pauline Nash, selected to perform the duty, was not only not competent but wholly inexperienced, and we think her

selection by Sister De Sales, a member of the corporation, to perform the task is alone sufficient to sustain the finding of the jury. It may be argued that Sister De Sales did not select Pauline Nash. This Sister testified that she was too busy to do it herself and gave a general order in the diet kitchen, where Pauline was employed to wash dishes and run errands, for some one to perform the task, but did not know who really performed the work. Conceding that all that was done was to give the general order, such a method of selecting a servant to do such work can hardly be said to be the exercise of ordinary care. Again, the preponderance of the testimony is that Pauline Nash did place the bottle in the bed, which supports and corroborates the testimony of Miss McKaig, a nurse, and appellee's wife, that it was customary for those in charge of the institution to assign Pauline to such duties. If the jury believed such to be the custom, that fact would support the finding that ordinary care was not observed in the selection and retention of appellant's servants. Again, it is in evidence that Miss Suggs, who placed appellee's wife in bed after the operation, made no examination of the bed to ascertain whether the bottle of hot water was in a safe position, notwithstanding it was shown that it was the duty of nurses to take such precaution. It also appears that Miss Suggs was not a graduate but a pupil nurse, upon whom, according to Sister De Sales, only such responsibility should be placed as their capabilities suggest, to be determined by the one in charge of the patient, who in this instance was Sister De Sales herself, since it is undisputed that this Sister was in charge of the floor upon which appellee engaged the room for his wife, and all patients as well.

The facts just recited, it occurs to us, would also sustain the finding of the jury that ordinary care was not exercised in the selection and retention of appellant's servants. It is further in evidence that Miss Fay, who took charge of appellee's wife after Miss Suggs had placed her in bed, made no examination of the bed or the bottle of hot water to ascertain if the patient was in a safe position and free from possible contact with the bottle of hot water. Fifteen or twenty minutes after she had been in the room, she looked beneath the bed coverings and discovered the bottle of hot water, and then only because directed to do so by appellee, who observed his wife's body twitching and jerking and heard her moaning in pain. Miss Fay was also not a graduate, but a pupil nurse, who, like Miss Suggs, was under the direction of Sister De Sales. These facts also, it occurs to us, are sufficient to sustain the finding of the jury that ordinary care had not been observed in the selection of its servants. Accordingly, and on the whole case, we conclude that the record does not present a case where we can say that the evidence is insufficient to sustain the finding of the jury on the only issue presented by the court, and that being true, and the rule of liability being as we have said, all other questions become immaterial, and the judgment must be affirmed.

Affirmed.