ELIAS PLIMPTON *vs.* FRANCIS G. RICHARDS and others, Executors.

*Torts—executors as such not liable for.*

Case will not lie against executors as such for damages caused by their raising the dam on a stream, whereby the plaintiff's mill was flowed, when the dam and the lands on which it is situated had, under the will of their testator, become vested in the executors and others.

ON EXCEPTIONS.

CASE for damages alleged to be caused by the flowing back of the water of the Cobbossecontee stream, in Gardiner, upon the plaintiff's mills on Purgatory stream, in Litchfield.

So much of the writ as is essential was as follows : " We command you to attach the goods and estate which were of Robert Hallowell Gardiner, late of Gardiner, in said county of Kennebec, deceased, in the hands and custody, and under the administration of Frederic Gardiner, J. W. T. Gardiner, and Francis G. Richards, executors of the last will and testament of the said R. H. Gardiner, Esq., to the value of two hundred dollars, and summon the said defendants, in their said capacity as executors as aforesaid, to answer," etc.

After setting out the plaintiff's seisin in his mills on Purgatory stream, and their long use and occupation by him, and his right to the use of the water, etc., the declaration alleged as follows : " And being so thereof seized, the said defendants, in their capacity as executors as aforesaid, not being ignorant of the premises, but contriving and intending to injure the plaintiff, and deprive him of the use and benefit of said mills, mill-dam, and mill-privilege, did . . . erect, build, maintain, and keep up a certain dam upon and across the said Cobbossecontee stream," etc.

There was evidence tending to show that the plaintiff was the owner of certain mills situated on Purgatory stream on the first day of April, 1867, and continued to own the same until the date of the

writ October 3, 1868; that during that time the whole of his mills were obstructed by back water, and that his works were flowed and his mills otherwise injured; that in the fall of 1866 the dam belonging to Robert H. Gardiner, at the time of his decease, was raised by the defendants by their putting on flash-boards, and that this raising of the dam and the stopping up of the waste-way in the dam caused the damage complained of.

The will of the testator, Gardiner, contained the following, including the dam and lands on which it was situate:

"Item 12. I give and bequeath all the rest and residue of my property to my sons, Robert Hallowell and Frederic, and my son-in-law, Richard Sullivan, jr., and my grandson, F. G. Richards, in trust, to manage the same as they shall think proper, and apply the income thereof to the payment of my just debts, and the annuities herein bequeathed; and I do hereby empower them to sell any portion of my real estate, and to give a good and sufficient deed of the same; and I direct my trustees to pay all my just debts, and after that is done, and the annuities herein bequeathed provided for, to divide all my remaining property in six equal portions, one of which I give to each of my children, Robert Hallowell Gardiner, J. W. Tudor Gardiner, Frederic Gardiner, Anne R. Richards, Henrietta Sullivan, and Eleanor Gardiner. This division to be so made that my homestead shall be given to my son Robert, with such conditions or additions as shall make his share equal in value to the others. And I further direct that the portions which will become due to my daughters shall be put in trust, the income to be paid to them severally during their lives, and the principal subject to their disposition at their decease.

"Item 13. I appoint my sons, Robert Hallowell and Frederic, and my son-in-law, Richard Sullivan, jr., executors and trustees of this my last will; also my grandson, Francis G. Richards."

By a codicil, he afterwards appointed his son, J. W. T. Gardiner, as joint trustee and executor. But the defendants only, viz., Francis G. Richards, Frederic Gardiner, and J. W. T. Gardiner, qualified as executors by giving bond.

Plimpton v. Richards.

The defendants' counsel requested the court to make the following rulings, which were refused:

1. That this action cannot be maintained against the defendants as executors of the will of R. H. Gardiner; because neither by his will, nor by the law, have they, as executors, any possession, right of possession, or control over the upper dam, or dam No. 1, where it is alleged that the flash-board was put on.

2. That this action cannot be maintained in its present form against the defendants for any torts or acts committed by them in their private and individual capacity, because the action is brought against the estate of R. H. Gardiner, and against the defendants solely in their capacity as executors of said estate.

The verdict was for the plaintiff, and the defendants alleged exceptions.

*L. Clay*, for the plaintiff.

*J. Baker*, for the defendants.

APPLETON, C. J. This is an action on the case against the defendants, as executors under the will of Robert H. Gardiner, to recover damages alleged to be caused by raising the dam on Cobbossecontee stream, in Gardiner, by which the plaintiff's lands are flowed.

The writ alleges that the defendants, "in their capacity as executors, contriving and intending to injure the plaintiff and deprive him of the use and benefit of (his) said mills, mill-dam, and privilege, did . . . erect, build, maintain, and keep a certain dam upon and across the said Cobbossecontee stream," etc.

By the will of Gardiner, it appears that the title to the dam and the land upon which the dam and mills are built is in the defendants, as trustees. All the real estate of the testator vested in them, subject only to be divested for the payment of his debts.

The duties and responsibilities of trustees and of executors are distinct and different. They act in different capacities and under different liabilities. They are legally as distinct as if they were different individuals.

The action is practically against the estate of Mr. Gardiner, for if the defendants are rightfully sued as executors, the estate must be responsible. It is not against them for any wrongful acts of their testator. It is for their own wrong-doings. But their wrong-doings were not official as executors. It was no part of their duty to commit trespass upon the rights of others. If they did they would be liable as individuals. It would be monstrous to hold that judgment and execution should issue against the estate of their testator for torts which they could have no authority by virtue of their executorship to commit. If an executor commits a trespass, it is his individual and personal act, not his representative act as the executor of his testator. He is to settle the estate, not destroy it.

If the defendants, in the acts complained of, were acting in their capacity as trustees in whom the legal title was vested, that would not render them liable as executors. Nor would their bondsmen, as executors, be responsible for any torts committed by them as trustees.                    *Exceptions sustained.*

CUTTING, KENT, BARROWS, DANFORTH, and TAPLEY, JJ., concurred.