SOUTHERN PACIFIC COMPANY·V. JOSEPH C. MAULDIN.

Decided May 12, 1898.

**1. Master and Servant—Ordinary Care—Sickness.**

A railroad company bound by its contract to furnish medical or surgical attendance to an employe is only bound to use ordinary care in the selection of a physician or surgeon, and is not answerable for the latter's mistakes.

**2. Same—Contract to Furnish Medical Attention.**

A railroad company which retains a portion of the monthly wages of its employes for medical services is bound to furnish such services as are practicable and reasonable when they are sick or injured.

APPEAL from Harris. Tried below before Hon. WILLIAM H. WILSON.

*Baker, Botts, Baker & Lovett,* for plaintiff in error.

*George H. Breaker,* for defendant in error.

PLEASANTS, ASSOCIATE JUSTICE.—The defendant in error, Mauldin, while in the service of the plaintiff in error as locomotive engineer, was seriously injured on the 17th of November, 1894, in the State of Louisiana, at what is known as the Bayou Mallette siding, on the railroad between Midland Junction, near the town of Crowley and the town of Eunice, a railroad operated by the Southern Pacific Company; but was neither owned nor operated by the Texas & New Orleans Railway Company. The cause of the injuries sustained by Mauldin was the derailment of the train of cars of which train he was, on the day of the accident, the engineer; and this suit was brought by him against both the Southern Pacific and the Texas & New Orleans Railway companies. The derailment of the train resulted from an open switch. This condition of the switch was not due to negligence on part of the defendant company or its servants, and the petition did not charge the defendants with such negligence. The accident occurred in the night, and the plaintiff charged that the company was negligent in not keeping a signal light at the switch, whereby its condition might be discovered by approaching trains; and another ground on which plaintiff sought to recover compensation for his injuries, was the alleged negligence of the Southern Pacific Company in committing him to the care of an incompetent surgeon and physician, by whose ignorance and malpractice in treating plaintiff's wounds, his injuries were greatly increased, and rendered incurable, and plaintiff made a cripple for life. Upon trial of the cause the jury were instructed to return a verdict for the Texas & New Orleans Company, and that they could not find for the plaintiff as against the Southern Pacific Company for a failure to keep a signal light at the place of accident, for the reason, that the plaintiff's own testimony showed that he had been operating a train on that road and by that switch for two months, during all which time the switch was without a signal light. The jury found a verdict for

the plaintiff against the Southern Pacific Company, and both plaintiff and defendant moved for a new trial, and their motions being overruled, both excepted and gave notice of appeal; and afterwards the Southern Pacific Company brought the case to this court by writ of error, and the plaintiff has filed cross-assignments of error.

The plaintiff in error under its fourteenth and fifteenth assignments, complains of the judgment of the court overruling its motion for a new trial, because the verdict of the jury is contrary to the evidence, and contrary to the law, as given to the jury, in the seventh and eighth paragraphs of the charge of the court. The seventh paragraph of the charge is:

"The employes of the Southern Pacific Company who put plaintiff under Dr. Joseph's care, had no authority to employ any physician, except for the emergency, until the plaintiff could be attended by the company's regular physicians, or be forwarded to its hospital, and the Southern Pacific Company can not be held liable for any act of said physician, besides such attention as he gave plaintiff on taking charge of him, as preliminary to turning him over to the defendant's regular physicians, and not for that, unless the evidence shows that the defendant, in employing said Dr. Joseph (if you find it did employ him), did not use, under all the circumstances, such care as a man of ordinary and reasonable care would have used to select a reasonably competent physician."

The eighth paragraph is as follows:

"If from the evidence you find that any of the agents of defendant employed Dr. Joseph to give medical attention to the plaintiff, and that in so doing they used the same care which a man of ordinary and reasonable care would have used to select a competent physician, then you will find in favor of the defendant, whether the said Joseph was negligent in his treatment of the plaintiff or not; but if you find that said company employed said Joseph, and did not use the care which a man of reasonable and ordinary prudence would have used in employing a physician, and that said physician did not use the skill and care in treating plaintiff which a physician of ordinary skill and care in his profession would have used, in the treatment which he gave to plaintiff on first taking charge of him as preliminary to turning him over to the Southern Pacific Company's medical department, and that by reason of said lack of skill (if any) in said preliminary treatment the plaintiff was injured, then you will find for plaintiff such an amount as will compensate him for his diminished capacity to earn a living (if any), his physical pain and suffering (if any), and loss of time (if any) as he suffered by reason of said neglect in said preliminary treatment alone, unless you find that if plaintiff had gone to defendant's hospital he could have avoided the results (if any) of such preliminary mistreatment (if any), in which event if you so find you will find for the defendant."

These assignments, we think, are well taken, and for the refusal of the court to grant the new trial the judgment is reversed and the cause remanded.

The evidence clearly shows that the servants of the defendant company were not wanting in the exercise of ordinary care in calling the physician they did, to attend and treat the plaintiff, Mauldin, at the time he was injured. The physician selected was one of two whose services could be immediately obtained, and he had the reputation of a reasonably competent and skillful physician and surgeon, and his reputation was equal to that of any physician in the vicinity of the accident. And the evidence further shows, that while this physician erroneously diagnosed the case, mistaking a dislocation of the hip for sraining of the muscles, yet permanent injury from the dislocation of the hip to the plaintiff would not have resulted but for his persistent refusal, for nearly a month after he was injured, to go to San Antonio for treatment. While the company did furnish medical and surgical treatment to persons injured while in their employment at other points along its line of railway than San Antonio, it was the rule of the company that all who were injured should be taken to the hospital as soon as practicable after they were injured. This hospital was thoroughly equipped with everything necessary for the proper treatment of fractured and dislocated limbs, and patients were there placed under the care of skilled surgeons and trained nurses. The privileges and advantages thus afforded by the company the plaintiff declined to accept until the time in which his limb could have been easily reduced had passed. The plaintiff was requested and advised by the servants of the company to allow them to take him to the hospital; but he preferred to remain at Eunice under the care of the physician first called to him; and there remained until he was advised by another physician of that place that his hip was dislocated; and he then, about three weeks after he was injured, was taken to Houston, and from there, upon the urgent request of the company's medical director, who had been called to Houston from San Antonio to consult with the company's local surgeon for the former city over the plaintiff's case, he consented to be taken to the hospital. But upon attempting to set the dislocated limb it was found impracticable to do so, on account of a false tissue in the cup of the joint, which the evidence of the medical experts shows always makes its appearance in cases of dislocation of the hip a few days after the dislocation, and continues to grow and increase in bulk, and if the operation of reducing the limb is postponed for several weeks after the injury, it is impracticable, without great danger to life, to replace the femur, or thigh-bone, in the acetabulum, or socket.

The evidence is conflicting as to whether the patient could have been properly and successfuly treated at Eunice, even had he been under the care of the best surgeons of the company, but we think that is an immaterial issue, as the evidence makes it clear that the defendant company's contract to furnish the plaintiff medical treatment did not require it to furnish at the place of injury any other treatment than such as the emergency might demand, and such as would be necessary to prepare the patient for transportation to the hospital at San Antonio. This medical assistance was furnished, as we have seen, by the servants of the

company calling to the patient a physician of good reputation residing in the vicinity of the accident. When this was done, and the patient declined the offer of the company to take him to San Antonio, declaring that he was satisfied with the treatment of the local physician and preferred to remain with him, the duty of the company to the plaintiff was ended, and he can not recover damages for his injury, unless the company is legally responsible, as is insisted by counsel for the defendant in error in his cross-assignments, for the mistake of the surgeon, to whose care the plaintiff was temporarily committed, in treating plaintiff for spraining and laceration of the muscles. To this contention we are not prepared to assent. The question is one of first impression it seems in this State. The only case cited by counsel in support of this proposition is that of Railway v. Artist, 60 Federal Reporter, 365, 367. The trial court held that the measure of duty, when a duty exists to furnish medical or surgical attention, is the use of ordinary care to furnish a reasonably competent physician, and this holding, it seems to us, is much more consistent with reason, and so far as our investigations have extended, is better sustained than the proposition contended for on behalf of the defendant in error, by authority. Vide Laubheim v. Steamship Co., 28 N. E. Rep., 266; Quinn v. Railway, 30 S. W. Rep., 1036; McDonald v. Hospital, 120 Mass., 432; Railway v. Price, 13 S. W. Rep., 639; Chapman v. Railway, 55 N. Y.

There are other assignments by the plaintiff in error assailing the correctness of several charges of the court on the ground that they were unauthorized by the evidence, and in one instance not only not authorized by the evidence, but was without any allegation in the pleadings to support it, but we deem it not necessary to determine whether or not they are well taken. There is one contention, however, by the plaintiff in error which it is proper for us to notice, so far as to indicate our nonconcurrence therein. That contention is, that the defendant company was not under contract to furnish medical attention to the plaintiff, Mauldin. By retaining a portion of the monthly wages of each employe for medical services, the company obligated itself to furnish such services as were practicable and reasonable to each of its employes when sick or injured; but this duty, as we understand the evidence, was to be discharged when practicable by treatment of the patients in the hospital at San Antonio, the patients being taken there gratuitously by the company. There is no complaint by the defendant in error of the instructions by the trial court to the jury that the plaintiff could not recover against the defendant, the Texas & New Orleans Railway Company, on any ground upon which recovery was sought in the petition, nor against the Southern Pacific Company for failure to keep signal lights at the place of accident. For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed by the Supreme Court.