## EWING et al. v. WM. L. FOLEY, Inc.* (No. 8101.)

(Court of Civil Appeals of Texas. Galveston. Feb. 25, 1922. Rehearing Denied March 16, 1922.)

**1. Executors and administrators ⚫119—Estate held liable for damage done by independent executors and trustees in construction of building for revenue-producing purposes.**

Where independent executors and trustees serving without bond had absolute control and management of the entire estate of more than $2,000,000, under the will directing them to use the income for support of a hospital, the estate was liable for damage done in their construction of big office building erected for income producing purposes, in view of Rev. St. arts. 2005, 5492, 5493, and Const. art. 1, § 13.

**2. Executors and administrators ⚫119—Court finding executors without individual fault properly made judgment payable out of estate.**

In action against executors and trustees for damage committed by them in the construction of office building for revenue producing purposes, the court in finding plaintiff entitled to damages and in finding the executors to have been without individual fault properly made amount of damages payable out of the estate.

**3. Executors and administrators ⚫440—Refusal to sustain plea in abatement of executors who ceased to act as such before time of trial held not error.**

Where independent executors and trustees being sued for damages done during their construction of a building for income-producing purposes ceased to act as independent executors and resigned as trustees after commencement of the action, but before the time of the trial, and by amended petition they were counted against individually as well as in their representative capacity, and the new trustees chosen pending the suit were made parties to the action, the court's refusal to sustain the plea in abatement of the executors and trustees against whom the action was originally brought *held* not error.

**4. Executors and administrators ⚫33—Independent executors cannot resign without court action.**

Under Rev. St. arts. 3397–3403, independent executors cannot resign without some court action.

**5. Evidence ⚫354(17)—Books properly kept admissible to show loss of profits and diminished value of good will.**

In action for loss of profits and diminished value of good will of plaintiff's business, plaintiff's books, which were shown to have been properly kept and were admitted by defendants' expert accountant, after they had been tendered to defendants for examination, to have been kept in the regular way, were properly admitted to show the loss of profits and diminished value of good will.

**6. Evidence ⚫474(20)—Plaintiff suing for loss of profits and diminished value of good will held properly permitted to testify with reference thereto.**

In an action for loss of profits and diminished value of good will, plaintiff, who had been engaged in the same character of business at the same location for many years, and who testified that from his experience he actually knew the various percentages of profit in his business and was able with reasonable certainty to tell what the the losses had been, and that he knew the value of the trade-name and reputation his business had built up prior to the injury complained of, as well as the extent to which the patronage had fallen off subsequent thereto, was properly permitted to testify as to such loss of profits and diminished value of good will.

**7. Appeal and error ⚫1040(6)—Refusal to sustain plea of limitation held harmless in view of judgment.**

In action against executors, failure to uphold plea of limitation of the executors as against amended petition in which they were sued individually, if error, was harmless, where the judgment was not against the executors personally, but against the estate.

**8. Limitation of actions ⚫124—Amended petition against executors individually and officially held not to set up a cause of action different from that of original petition against executors in their official capacity.**

Where original petition was filed against executors in their official capacity, amended petition against them individually, as well as officially, did not set up a new cause of action, as against plea of limitations.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Wm. L. Foley, Inc., against T. J. Ewing, Jr., and others, executors and trustees of the estate of George H. Hermann, deceased. Judgment for plaintiff, and defendants appeal. Reformed and affirmed.

J. W. Lockett, of Houston, for appellants. Presley K. Ewing and Ewing Werlein, both of Houston, for appellee.

GRAVES, J. The executors and trustees of Geo. H. Hermann's estate, through their agents, while constructing its "Hermann Building" in the city of Houston next to the Foley Building, so excavated underneath the north wall of the Foley Building as to cause it to crack and collapse to such extent that it had to be demolished and replaced with a new wall. The injury occurred on September 7, 1916, and the replacement, which was done at the expense of the Hermann estate, was finished on December 24, 1916.

Wm. L. Foley, Inc., which during and for a long time prior to this period was doing business in the Foley Building, claiming that the injury—together with the directly attendant consequences during the time taken

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 3, 1922.

for reconstruction—had proximately caused it losses in depreciation of the value of the good will of its business, and in diminution of what would otherwise have been its profits, then prosecuted this suit for damages accordingly against Hermann's executors and trustees in their representative capacity, the three original executors and trustees of the estate being also counted against as individuals.

After the defendants had interposed general and special demurrers, denial, limitation, and certain other defensive matters, the cause went to a jury on special issues, which returned in substance these findings, questions 3, 4, 5b, and 5g being omitted because either answered in or eliminated by other responses:

(1) That the Hermann executors, by their agent, caused excavations to be made on and under the wall of the Foley property without the consent of the owner of such property; (2) that such excavation, in the manner same was made and the work done, was a proximate cause of the injury to the Foley wall; (5) that the excavation inquired about in the two next preceding issues and found, in the manner the same was made and the work done, was negligence; (5a) that the plaintiff did not, nor did W. L. Foley nor Miss Rose Foley before breaking of the Foley wall, have knowledge or notice that the Hermann executors, or any of their agents or employés, were going to excavate next and under the Foley wall in manner as done; (5c) that the Hermann executors did not by any of their agents or employés give notice to plaintiff or the owner or owners of the Foley Building, nor did such plaintiff or owner or owners have knowledge, that such agent or agents were intending to excavate at or adjoining the Foley Building in a way indicating danger to such building in time to have enabled such plaintiff or owner or owners to take precautions preventative of the injury to such building; (5d) that the failure to give such notice was negligence; (5e) that such negligence was a proximate cause of the injury to the Foley wall; (5f) that W. L. Foley was not guilty of negligence in not informing F. S. Glover or his employés or the original executors or their employés of the fact that there was a cellar or basement under the Foley Building; (6) that the plaintiff's business as conducted in the Foley Building was interrupted or interfered with during the period of restoration of the building by the injury thereto from the excavation made as above found; (7a) that plaintiff thereby suffered loss of profits or gain in its business during such period of interruption or interference; (7b) that such loss was a natural and proximate result of such injury and interruption or interference with its business; (8) that the amount of profits or gain so lost by it in its

business was $17,500; (9) that plaintiff's business at the time of the injury to the Foley Building had acquired a good will; (10) that such good will was of greater value immediately before the injury to the Foley Building from the excavations such as found than it was immediately after restoration of the building from such injury; (11) that the difference between the value of such good will immediately before the injury to the Foley Building as found and its value immediately after the restoration of the building from such injury was $1,000; (12) that the loss of such good will suffered by the plaintiff was such as might have reasonably been anticipated as a natural and probable consequence of the negligent excavation.

As this résumé shows, there were only two items of damage returned by the jury, the $17,500 for lost profits and the $1,000 for depreciation in the value of good will of the business, but the court, instead of taking the $18,500 aggregate of these for the basis, assumed the authority to add thereto 6 per cent. per annum interest thereon from the date the damage was found to have accrued to the date the jury's verdict was returned—that is, from December 24, 1916, to November 15, 1920—the increment for this interest amounting to $4,319, and entered judgment in favor of the plaintiff corporation for $22,819.

On additional findings by the court that the wrongful acts were committed by agents or employés of Ewing, Settegast, and Stewart as independent executors and trustees under Hermann's will, without individual fault or lack of good faith toward the estate on their part, and that such facts would entitle them, if held individually, to indemnity out of the estate, it was further adjudged, under recitation that circuity and useless indirection would be avoided by holding the estate directly responsible, that the recovery run against these three both individually and as such executors, as well as against all the other appellants in their capacity as trustees of the estate, the same to be satisfied, however, not out of the property of the three individuals so named, but wholly out of such property of the Hermann estate as was used solely for revenue purposes.

From that decree this appeal proceeds.

There will not be a seriatim discussion of all the large number of assignments, but only what are deemed the controlling questions presented will be explicitly determined.

In the first of these appellants contend that their demurrers or requests below for an instructed verdict in their favor should have been granted, because, they affirm, "the estate of a deceased person is not liable for damages caused by the tort of the executor of his will, the administrator or trustee of his estate, or by that of the agents,

servants, or employés of any one of such representatives." Quite an array of authorities applying the early rules of the common law as to executors and administrators are cited, the leading ones being: Able v. Chandler, 12 Tex. 88, 62 Am. Dec. 518; R. C. L. vol. 11, p. 172, § 184; Rose v. Cash, 58 Ind. 278; Plimpton v. Richards, 59 Me. 115; Second Decennial Edition of American Digest, vol. 10, p. 1747, title "Executors and Administrators," § 119; Century Digest, vol. 22, subject "Executors and Administrators," § 483.

As a corollary, it is further asserted in this connection that the endowment fund of a public charity, such as it is claimed the estate of Hermann in fact established, cannot be taken to satisfy claims resulting from the negligence of employés of a natural person selected by the testator to administrator the fund or conduct the charity. As upholding this position, the main cases presented are: St. Paul's Sanitarium v. Wiliamson (Tex. Civ. App.) 164 S. W. 36; Armendarez v. Hotel Dieu (Tex. Civ. App.) 145 S. W. 1030, 164 Ky. 810, 176 S. W. 181, and (Tex. Com. App.) 210 S. W. 518; Railway Co. v. Hanway (Tex. Civ. App.) 57 S. W. 695; So. Pac. v. Mauldin, 19 Tex. Civ. App. 166, 46 S. W. 650; Williamson v. Louisville Ind. School, 95 Ky. 251, 24 S. W. 1065, 15 Ky. Law Rep. 629, 23 L. R. A. 200, 44 Am. St. Rep. 243; Parmenter v. Barstow, 22 R. I. 245, 47 Atl. 365, 63 L. R. A. 227; Basabo v. Salvation Army, 35 R. I. 22, 85 Atl. 120, 42 L. R. A. (N. S.) 1144; Thornton v. Franklin Square House, 200 Mass. 465, 86 N. E. 909, 22 L. R. A. (N. S.) 486.

[1] The contention for the applicability of either principle as stated to the case here made is overruled. The authorities there appealed to undoubtedly sustain the rule so first advanced as the general one in those jurisdictions and situation where the rigidity of the ancient English common law affecting the estates of decedents is still adhered to, but we do not think these swaddling clothes of that old system fit the modern figure of our law upon the subject, modified by statutes of our own and applicable to different and more complex business conditions, as it is.

The pertinent facts out of which this litigation comes, other than those appearing in the previously catalogued findings of both court and jury, are:

The executors and trustees were independent and without bond, holding in their absolute control and management the entire assets of the testator, with a power to sell and convey everything, other than the real estate specially devised for parks and the hospital, restricted only by their own judgment as to its being necessary to better carry out the purposes of the will. The estate consisted largely of Houston real property and was given an appraised value of $2,619,419.43, only a comparatively small part of which total was to be directly used for a charity hospital, the great bulk of the estate being reserved for revenue-bearing and income-producing purposes, with the objective of devoting the net returns thus obtained to the maintenance and operation of the hospital. The will expressly authorized the construction on lands of the estate within the city of Houston of revenue-producing improvements, such as the "Hermann Building" here involved. This was a modern eight-story concrete office building, costing when completed more than $300,000, was never to be used for and had no other connection with a hospital than to raise funds to support it, and was built for the estate for that purpose by Ewing, Settegast, and Stewart, the three original executors and trustees, through Mr. F. S. Glover, whom they authorized to act for them.

With respect to executors and administrators, there is little analogy between the system prevailing under the early common law and that with us. Prior to the Statute of 31 Edward III (Hudson v. Hudson, Cas. Ralb. 127, 2 Eng. Rul. Cas. 134) they had no administration at all upon a decedent's estate, the king, as the father of his country, being intrusted with an intestate's property, and after that time it affected the personal estate only, the land of the decedent not being subject to his debts unless it was expressly charged for that purpose. 2 Ruling Case Law, pars. 3 and 121. Jurisdiction over the probate of wills was also divided until as late as the reign of Queen Victoria, that over those relating to personal property being vested in the ecclesiastical courts, while as to those devising real estate it lay in the courts of law. There was, furthermore, a separate administration of legal and equitable remedies, and, as we understand, the technical common-law rule of nonliability of an estate for the torts of its representatives was not recognized or followed by the chancery courts when the representatives were in the exercise of good faith and without individual fault.

Now, when its framers came to build our law upon this subject, they ordained that a single court should have general jurisdiction in all matters of probate, affirmatively conferred upon it powers unknown to the ancient common law, and then provided that the common law of England should be the rule of decision only in "so far as it is not inconsistent with the Constitution and laws of this state." R. S. art. 5492.

It was further specifically enacted that "the rights, powers and duties of executors and administrators," not the liability or the freedom from it of the estate, "shall be governed by the common law, when not otherwise provided by statute" (R. S. art. 5493),

and that judgments against an independent executor "shall be enforced against the property of the testator in the hands of such executor, by execution, as in other cases" (R. S. art. 2005).

In addition to all these, our Bill of Rights guaranteed to every person that the courts would be open, and that under our blended system of law and equity he should have a remedy by due course of law for an injury done him in his lands, goods, person, or reputation. Constitution of Texas, art. 1 § 13.

In these circumstances of both fact and law thus surrounding this cause, we do not think applicable the common-law rules of exemption from liability of the estate on account of the torts of its representatives, or because of its constituting a charity.

It will not do here to say, as appellants in effect do in their previously quoted subsidiary proposition, that it would thwart the purpose of this endowment for a hospital, that is, would oppose the will of the founder of the trust, to pay from its funds damages caused by the tortious and negligent acts of his representatives, or their agents, for two reasons: (1) The endowment fund itself was in this instance in no true or direct sense actually involved; (2) the will of an individual may not exempt property from the operation of the general laws of the land.

The wrongful act here recovered for was merely an incident of the construction by the executors, acting directly through their agent, of an office building intended solely for money-making purposes, the construction of which for those purposes was expressly contemplated and authorized by the testator. Only its net income after deduction of the cost of construction and the expenses of operation was to constitute a fund for charity, and no reason is perceived for not regarding the liability allowed as any other expense of construction. In all fairness and justice it must be assumed that the testator himself anticipated the incurring of necessary cost, as well as reasonably probable incidental injuries to others, in the erection of such a building in the heart of the business district of a populous and busy city.

The appellee was in no manner a beneficiary of the trust or charity fund so ultimately provided for by the will of Hermann, and sustained no other relation to his estate than that of an adjoining owner to one of its purely business properties. It could not therefore be said to have assumed the risk of such torts as were committed on the principle whether sound or not, thus stated in Powers v. Mass. Homeopathic Hospital, 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372, and followed in a number of other cases:

"One who accepts the benefit either of a public or a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants."

The right, then, of the appellee to be secure in the possession of its lands, goods, and reputation being one created by the general laws of the land, the correlative duty of the Hermann executors to respect that right arose from the same source.

The views expressed are, we think, well fortified by authority.

In Hotel Dieu v. Armendarez (Tex. Com. App.) 210 S. W. 518, and (Tex. Civ. App.) 145 S. W. 1030, it was held that a religious corporation operating a hospital as a charity was liable to its employés for its tort—that is, for negligence on its part resulting in injuries to the employés—and that execution might issue against its property in satisfaction of the claim.

Hewett v. Aid Association, 73 N. H. 566, 64 Atl. 190, 7 L. R. A. (N. S.) 496, was a case where a hospital administering a public charity was held liable for negligent injuries to its servants, the court saying:

"If the language of some courts is broad enough to deny the liability of charitable corporations in all actions of tort [citing cases], it cannot be regarded as a discriminating statement of the law upon that subject."

The Supreme Court of Michigan, through its Chief Justice, in Bruce v. M. E. Church, 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, 11 Ann. Cas. 150, points out as the difference between that case and Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427, the fact that in the Downes Case the plaintiff was a patient in the defendant hospital and so a beneficiary of the trust it administered, while in the Bruce Case he was not a beneficiary, but merely an employé of the defendant's contractor, and thus declares the law:

"I conclude from this reasoning that corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and cannot, therefore, claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such a tort, and that Downes v. Harper Hospital and other similar cases are consistent with this rule. * * *

"It is not surprising that years should have elapsed before the correct legal principle governing these cases was announced in Powers v. Mass. Homeopathic Hospital. The discovery of correct legal principles, like the discovery of scientific and social truths, requires time and patient investigation."

"The fact of incorporation is not essential to the reasoning, beyond this: That the act permitting incorporation of trustees of a charitable fund is an express legislative recognition of a hospital as a charitable asylum."

To the same effect also are the following cases: David Hordern v. Salvation Army, 199 N. Y. 233, 92 N. E. 626, 32 L. R. A. (N. S.) 62, 139 Am. St. Rep. 889; Church of Ascension v. Buckhart, 3 Hill (N. Y.) 193; Kellogg v. Church Charity Foundation, 128 App. Div. 214, 112 N. Y. Supp. 566; Gamble v. Vanderbilt University, 138 Tenn. 616, 200 S. W. 510.

As the quotation from it shows, the Bruce Case holds immaterial the distinction drawn by appellants in their corollary contention between instances where the trustee is a corporation and where he is a natural person. That conclusion is elsewhere reiterated in the opinion in this language:

"The circumstance that the trustee is a corporation instead of an individual cannot affect the question of liability. If authority is needed to justify this statement, which necessarily follows from the elementary principle of law that corporations, like individuals, are amenable to the law of the land, it is found in the following cases: Gilbert v. Trinity House, L. R. 17, Q. B. Div. 795; Foreman v. Mayor, etc., of Canterbury, L. R. 6, Q. B. 214; Mersey Docks v. Gibbs, supra."

We also conclude that the court below did not err, under the developed facts before it, in directing that the recovery awarded be satisfied solely out of the Hermann estate rather than that execution for it issue against Ewing, Settegast, and Stewart individually, and that they then have reimbursement out of the estate. The cross-assignment of the appellee presenting this action of the court as error is accordingly overruled.

This seems to us a fit setting for the application of the maxim, "The law commands nothing vainly," quoted by our Supreme Court in City of Austin v. Cahill, 99 Tex. 188, 88 S. W. 542.

[2] These representatives, having been without individual fault, were undoubtedly entitled to reimbursement out of the estate, and the court, in the exercise of its broad equity powers, was not without authority to cut the Gordian knot by permitting in the first instance what would thus necessarily follow anyway, that is, a satisfaction of the liability out of the property of the estate. What we conceive to be the rule upon this subject is thus stated in the footnote to 39 Cyc. 302:

"It is held that, where the trustee in the ordinary management of the estate, either himself or his agent, does some act whereby a third person is injured, for which injury the third person recovers damages against the trustee, the trustee, if he has acted with due diligence and reasonably, is entitled to be indemnified out of the trust estate (Benett v. Wyndham, 4 De G., F. & J. 259, 65 Eng. Ch. 200, 45 Eng. Reprint, 1183), and that, where the right of indemnity exists, the person recovering judgment may avail himself of it and proceed directly against the trust estate. In re Raybould [1900] 1 Ch. 199, 69 L. J. Ch. 248, 82 L. T. Rep. N. S. 46, 48 Wkly. Rep. 301. And see Kellogg v. Church Charity Foundation, 128 N. Y. App. Div. 214, 112 N. Y. Supp. 566."

[3] Appellants next say the plea in abatement of Ewing, Settegast, and Stewart, alleging that on August 21, 1918, they ceased acting as independent executors and subsequently resigned as trustees, so that at the time of trial they occupied neither position, should have been sustained. The assignment is overruled.

The suit was filed May 18, 1917, more than a year before this retirement, as alleged. The petition sought to charge the Hermann estate, and accordingly sued the three individuals named, who alone were then the independent executors and trustees, in their representative capacity. The will authorized them to appoint four additional trustees, which they did on August 21, 1918, thereupon or thereafter themselves resigning as trustees, but not attempting to do so as executors.

Subsequently, by amended petitions, they were counted against individually, as well as in the same representative capacity as at first, and along with new trustees who had been chosen pending the suit, thus completing the roster of all the parties defendant at the time of judgment.

[4] We do not think they could have resigned as independent executors without some court action, even if that had been undertaken. Title 52, c. 16, R. S.; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367. As to the effect of their retirement as trustees, no reason occurs as to why their resulting situation was not analogous to that of purchasers from a party litigant of property pendente lite, who are quite generally held to take subject to the rights of other parties to the suit and to be concluded by the final judgment therein, whether they themselves ever became parties to the action or not. Especially would this consideration seem apropos here, since the will vested the title to all the property of the estate in these three persons as the original trustees and in their successors in the trust. See A. & E. Ency. of Law, vol. 21, p. 595, II, and Texas cases cited in footnote. At all events their retention as parties defendant is not shown to have in any way injured appellants.

On the authority of the recent holding of the Supreme Court through the Commission of Appeals in So. Gas & G. E. Co. v. Adams & Peters, 227 S. W. 945, the sixth assignment of appellants, challenging the court's addition of the $4,319 for interest to the aggregate of damages as found by the jury, is sustained, and this increment will be eliminated.

Under their twelfth assignment appellants very earnestly and ably insist that the evidence was insufficient to raise an issue for the jury as to whether the plaintiff, within a reasonable degree of certainty as to both the fact of its occurrence and the amount thereof,

suffered a loss of profits in consequence of the negligent wrong found to have been inflicted.

The unusual length of the statement of facts makes impracticable here an attempt to review at length or even to adequately summarize the evidence bearing upon the matter, but, after a most careful consideration of it, we are clear in the conclusion that it did not only raise the issue, but also furnished sufficient support for the findings returned upon the question, which have been hereinbefore referred to.

Consideration by this court of many of the remaining assignments, inclusive of the thirtieth, is objected to by the appellee on the ground of a failure to comply with the rules in their preparation and presentment.

We are inclined to think a number of these objections well taken. If this were overlooked, however, and consideration given the entire group, we are convinced that none of them present reversible error. The fourteenth to nineteenth, inclusive, complain of different rulings relating, severally, to the admission in evidence of certain summaries of bookkeepers and statements of accountants touching the condition of appellee's books, and to its inventories of stock. The twentieth to twenty-second, inclusive, attack the admission of W. L. Foley's testimony to the effect, among other things, that, as a result of the wrongful acts complained of, his company's millinery was hurt 75 per cent. of its value; that they were forced to carry over about one-third more goods than their average for other years; that the values placed upon the inventories of the goods taken at several different times and passed up to the bookkeeper were correct, and that the difference in the value of the good will of the appellee's business before the cracking and after the restoration of the wall was $12,500. The twenty-third to thirtieth, inclusive, assert errors either of commission or of omission on the part of the court in charging the jury.

[5] The testimony thus complained of was all presented as tending to show the loss of profits and diminished value of good will sued for, and we are unable to hold that, in the circumstances offered, it was inadmissible for that purpose. The summaries, statements, and inventories were shown to correctly reflect the condition of the appellee's books. The books were shown to have been properly kept, and, though very bulky, were themselves not only produced in court, but tendered to appellants for examination. This offer was accepted, and the trial of the cause adjourned for several days to permit their expert accountant to go over them. After doing so, he testified that they were kept in the regular way, there being no irregularities to speak of, and presented statements from them of his own, which were offered in evidence by the appellee and which differed only slightly from those it had prepared and also introduced.

[6] In addition, it was shown that Mr. W. L. Foley had been engaged in the same character of business at the same location for a long number of years. He testified that from his experience he actually knew the various percentages of profit in his business, that is, the average profits made in the different departments, and so was able with reasonable certainty to tell what the losses had been; that he also knew the value of the trade, name, and reputation his business had built up prior to this injury from its long course of fair dealing with the public, as well as to what extent there had been a falling off in patronage during and subsequent to it, and hence was able to estimate the value of the good will both before and after the injury. The matter at issue was not susceptible of proof with mathematical accuracy. We think the court's charge fairly and fully presented the issues raised by the pleadings and evidence, and hence is not subject to the criticisms made against it in the assignments last mentioned.

[7] The final attack made upon the judgment is that the court should have held the appellee's cause of action barred by limitation, that is, should have upheld the plea of limitation of Ewing, Settegast, and Stewart, as against individual liability, since the suit was first filed against them as independent executors of the estate, and, after the lapse of more than two years from the date the cause of action arose, by amended petition, against them individually as well.

This plea correctly recites the fact that these three defendants were not counted against individually till after the expiration of two years subsequent to accrual of the cause of action, but, in view of our holding that judgment against the estate direct was proper under the facts, since the individual estates of these parties were not held liable, it appears to present nothing that could have been of prejudice.

[8] As concerns the estate, we do not think it could be said that this plea set up a new cause of action. The persons themselves were the same, the facts for liability were identical, and no right of action was first alleged in one capacity and then changed to another, but it was simply newly averred that the same persons, out of the same facts, were not only the medium through whom the estate was responsible, but were also liable as individuals.

It follows from the conclusions stated that the trial court's judgment should be reformed by eliminating from the recovery awarded the $4,319.00 added for interest on the damage items found by the jury, and, as so reformed, should be affirmed. That order has been entered.

Reformed and affirmed.